RECEIPT # 250
AMOUNT $ 250
SUMMONS ISSUED 1-1
LOCAL RULE 4.1
WAIVER FORM
MCF ISSUED
BY DPTY. CLK.
DATE 7-11-05

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

321-65517
250.00
CLK
7-11-05

CIVIL ACTION NO.

CHARLES G. LEPORIN, FERDINANDO L. ASSINI, BIL-RAY HOME IMPROVEMENTS AND CONTRACTING CORP. OF BRONX, NEW YORK And BIL-RAY ALUMINUM SIDING CORP. OF QUEENS, INC.
Plaintiffs,

05 11464

vs.

Bowler

The S/V "*DIRECT SAIL*", her sails, engines, boilers, tackle, etc.,
In Rem,

and GARY ISKRA and DEBORAH L. ISKRA
In Personam,
Defendants.

**PLAINTIFFS' VERIFIED COMPLAINT**

The Complaint of the Plaintiffs against the S/V DIRECT SAIL, her sails, engines, tackle, furniture, apparel, appurtenances, etc., *in rem,* and against GARY ISKRA and DEBORAH L. ISKRA , *in personam,* in a cause of action for enforcement of a preferred ship mortgage and of contract civil and maritime, alleges upon information and belief:

1. All and singular the following are true and constitute admiralty and maritime claims within the meaning of Rule 9(h) of the Federal Rules of Civil

Procedure and within the admiralty and maritime jurisdiction of this Honorable Court.

2. At all times hereinafter mentioned, Plaintiff CHARLES G. LEPORIN was and now is a citizen of the State of New York with an office and place of business at 40 Elmont Road, Elmont, New York.

3. At all times hereinafter mentioned, Plaintiff FERDINANDO L. ASSINI was and now is a citizen of the State of New York with an office and place of business at 40 Elmont Road, Elmont, New York.

4. At all times hereinafter mentioned, Plaintiff BIL-RAY HOME IMPROVEMENTS AND CONTRACTING CORP. OF BRONX, NEW YORK was and now is a corporation organized and existing under the laws of the State of New York with an office and place of business at 40 Elmont Road, Elmont, New York.

5. At all times hereinafter mentioned, Plaintiff BIL-RAY ALUMINUM SIDING CORP. OF QUEENS, INC. was and now is a corporation organized and existing under the laws of the State of New York with an office and place of business at 40 Elmont Road, Elmont, New York.

6. At all times hereinafter mentioned defendant S/V DIRECT SAIL is and was a vessel documented under the laws and flag of the United States in the name of defendants Gary Iskra and Deborah L. Iskra, individuals residing in

Ligonier, Pennsylvania as owners thereof, and having

official number 983900, being of approximately 35 gross

tons, and approximately 31 net tons and built in 1992 at

Southwest Harbor, Maine. Said vessel is now within the

navigable waters of this District.

7. On or about December 23, 2004, defendants Gary

Iskra and Deborah L. Iskra executed a Second Preferred

Ship Mortgage (the ''Mortgage'') covering the DIRECT SAIL

in favor of Plaintiffs as Mortgagees as security for a

Promissory Note dated December 23, 2004, which was

executed and delivered by Gary Iskra and personally

guaranteed by Deborah L. Iskra. The principal amount of

said mortgage is $1,870,000.00 and the maturity date is

February 16, 2006. True copies of the Mortgage, Note and

Limited Guaranty are attached hereto as Exhibits 1, 2 and

3 respectively.

8. The Mortgage was duly filed for record on January

3, 2005, at 10:45 A.M. in the U.S. Coast Guard National

Vessel Documentation Center, the proper place for the

recording of a mortgage covering the vessel S/V DIRECT

SAIL, and was duly recorded and assigned locator number

05-04 285.

9. Long prior to the commencement of this action all

acts and things required to be done in order to constitute

the Mortgage as a Second Preferred Mortgage constituting a preferred mortgage lien upon the mortgaged vessel DIRECT SAIL, in accordance with the provisions of the laws of the United States were accomplished.

10. At the time of the filing of this action, defendant Gary Iskra is in default under the Mortgage and the Promissory Note. And defendant Deborah L. Iskra has failed to honor her personal guaranty. Among other defaults, defendant failed to make payment in accordance with the terms of the Mortgage on May 15, 2005 as and when due.

11. Pursuant to the foregoing, ISKRA owes in principal the sum of $1,498,007.08, plus interest accrued thereon in the amount of $ 7,490.03 through May 15, 2005, and accrued thereafter pursuant to the Mortgage.

12. In addition to the debt of defendant ISKRA to Plaintiffs as evidenced by the Promissory Note secured by the Mortgage Plaintiffs, in order to protect their interest in the DIRECT SAIL, may be compelled to advance monies to maintain the condition of the collateral to keep the same safe, secure, and seaworthy. Plaintiffs will seek reimbursement from defendants for these charges.

WHEREFORE, in consideration of the premises, plaintiffs pray as follows:

1. That process in due form of law according to the course and practice of this Honorable Court in causes of admiralty and maritime jurisdiction issue against the S/V DIRECT SAIL, her sails, engines, tackle, furniture, apparel, appurtenances, etc., and that all persons claiming any title or right to said vessel may be cited to appear and answer under oath the allegations of this Complaint;

2. That process issue in the manner provided by law, upon the defendants Gary Iskra and Deborah L. Iskra citing them to appear and answer under oath the allegations of this Complaint;

3. That the Second Preferred Mortgage as evidenced by the Mortgage be declared a valid and subsisting mortgage on the whole of the S/V DIRECT SAIL, her engines, tackle, furniture, apparel, appurtenances on board and on shore, etc., prior and superior in right and interest to any claim therein or thereon by any other person, firm, or corporation whomsoever or whatsoever except for any First Preferred Ship Mortgage;

4. That plaintiff have a decree against the S/V DIRECT SAIL, her sails, engines, tackle, furniture, apparel, appurtenances on board and on shore, etc., for the full amount of its aforesaid claims, attorneys' fees

and costs, as provided in the attached documents;

5. That the S/V DIRECT SAIL, her sails, engines, tackle, furniture, apparel, appurtenances on board and on shore, etc., be condemned and sold free and clear of all liens and encumbrances to satisfy the decree of the plaintiffs, and that this Honorable Court award to the plaintiff out of the proceeds of said sale the full amount of its claims as aforesaid with preference and priority over all other persons, firms, and corporations whomsoever and whatsoever except for any First Preferred Ship Mortgage;

6. That this Court decree the manner in which notice of the commencement of this action be given by plaintiff to the Owner, Master, or caretaker of the S/V DIRECT SAIL, to the defendant ISKRA, and to any person, firm, or corporation having or claiming to have recorded a notice of claim of an undischarged lien as provided for by the applicable statutes and rules;

7. That should the proceeds of the sale of the S/V DIRECT SAIL be insufficient to satisfy the claims of the plaintiffs against defendants Gary Iskra and Deborah L. Iskra , *in personam*, that the Court enter a judgment for such deficiency against the defendants Gary Iskra and Deborah L. Iskra , *in personam;* and

8. That the court grant such other and further relief to which the plaintiffs may show themselves justly entitled.

Dated: Boston, Massachusetts
July 1$, 2005

By its attorneys,
**CLINTON & MUZYKA, P.C.**

**Attorneys for Plaintiffs**

**Thomas E. Clinton**
**BBO NO. 086960**
One Washington Mall
Suite 1400
Boston, MA 02108
(617) 723-9165

**VERIFICATION**

I, Charles G. Leporin, being duly sworn, deposes and says that:

I am a plaintiff herein. I have read the foregoing Verified Complaint and I know the contents thereof and the same are true to the best of my own knowledge, except as the matters therein stated to be upon information and belief, and unto those matters I believe them to be true.

Signed under the pains and penalties of perjury on this 1st day of July, 2005.

Charles G. Leporin

**ACKNOWLEDGMENT**

STATE OF NEW YORK Elmont, NY
COUNTY OF Nassau

Then appeared before me the above-named Charles G. Leporin, known to me who, being duly sworn, stated that he read the foregoing document and that he executed said document as his free act and deed on the 1st day of July, 2005.

Notary Public (SEAL)
My Commission Expires: 3/11/06

**VERIFICATION**

I, Ferdinando L. Assini, being duly sworn, deposes and says that:

I am a plaintiff herein. I have read the foregoing Verified Complaint and I know the contents thereof and the same are true to the best of my own knowledge, except as the matters therein stated to be upon information and belief, and unto those matters I believe them to be true.

Signed under the pains and penalties of perjury on this 1st day of July, 2005.

Ferdinando L. Assini

**ACKNOWLEDGMENT**

STATE OF NEW YORK
COUNTY OF Nassau

Elmont, NY

Then appeared before me the above-named Ferdinando L. Assini, known to me and who, being duly sworn, stated that he read the foregoing document and that he executed said document as his free act and deed on the 1st day of July, 2005.

CHRISTOPHER LEONE
NOTARY PUBLIC, State of New York
No. 01LE6070846
Qualified in Nassau County
My Commission Expires Mar. 11, 2006

Notary Public (SEAL)
My Commission Expires: 3/11/06

**VERIFICATION**

I, Charles LePorin, being duly sworn, deposes and says that:

I am the President of Bil-Ray Home Improvements and Contracting Corp. of Bronx, New York, plaintiff herein. I have read the foregoing Verified Complaint and I know the contents thereof and the same are true to the best of my own knowledge, except as the matters therein stated to be upon information and belief, and unto those matters I believe them to be true.

Signed under the pains and penalties of perjury on this 1st day of July, 2005.

**ACKNOWLEDGMENT**

STATE OF NEW YORK Elmont, NY
COUNTY OF Nassau

Then appeared before me the above-named Charles G. Leporin, known to me or shown to me to be acting in the capacity claimed and who, being duly sworn, stated that he read the foregoing document, that he was authorized to execute said document, and that he executed said document as the free act and deed of said corporation on the 1st day of July, 2005.

CHRISTOPHER LEONE
NOTARY PUBLIC, State of New York
No. 01LE6070848
Qualified in Nassau County
My Commission Expires Mar. 11, 2006

[signature]
Notary Public (SEAL)
My Commission Expires:

**VERIFICATION**

I, FERDINANDO L. ASSINI, being duly sworn, deposes and says that:

I am the President of Bil-Ray Aluminum Siding Corp. of Queens, Inc., plaintiff herein. I have read the foregoing Verified Complaint and I know the contents thereof and the same are true to the best of my own knowledge, except as the matters therein stated to be upon information and belief, and unto those matters I believe them to be true.

Signed under the pains and penalties of perjury on this 1st day of July, 2005.

[signature]

**ACKNOWLEDGMENT**

STATE OF NEW YORK Elmont, NY
COUNTY OF

Then appeared before me the above-named Ferdinando C. Assini, known to me or shown to me to be acting in the capacity claimed and who, being duly sworn, stated that he read the foregoing document, that he was authorized to execute said document, and that he executed said document as the free act and deed of said corporation on the 1st day of July, 2005.

CHRISTOPHER LEONE
NOTARY PUBLIC, State of New York
No. 01LE6070848
Qualified in Nassau County
My Commission Expires Mar. 11, 2006

Notary Public (SEAL)
My Commission Expires:

# PROMISSORY NOTE

$1,870,000.00

December 23, 2004
Brooklyn, New York

FOR VALUE RECEIVED, the undersigned, AMERICA'S HOME IMPROVEMENT COMPANY, LLC, a Delaware limited liability company with offices at 4343 South 96th Street, Omaha, Nebraska 68127, GARY ISKRA, an individual residing at 464 Meyers School Rd, Ligonier, Pennsylvania 15658, and MARK ALOE, an individual residing at 3132 Miller's Run Road, Cecil, Pennsylvania 15321 (each a "Payor" and collectively, the "Payors"), hereby, jointly and severally, promise to pay to the order of Charles G. LePorin, an individual residing at 27 Swarthmore Lane, Dix Hills, New York 11746, Ferdinando L. Assini, an individual residing at 3379 Harbor Point Road, Baldwin, New York 11510, Bil-Ray Home Improvements and Contracting Corp. of Bronx, New York, a New York corporation with offices at 40 Elmont Road, Elmont, New York 11003, and Bil-Ray Aluminum Siding Corp. of Queens, Inc., a New York Corporation with Offices at 40 Elmont Road, Elmont, New York 11003 (sometimes collectively referred to herein as the "Bil-Ray Group" or "Payee"), the principal sum of ONE MILLION, EIGHT HUNDRED SEVENTY THOUSAND DOLLARS ($1,870,000.00), on February 15, 2006 (the "Maturity Date") as provided herein.

The Payors promise, jointly and severally, to pay the principal amount of this Note plus interest on the unpaid principal amount hereof at the rate of six percent (6%) per annum, from December 15, 2004 until the date the principal amount of this Note is paid in full, in accordance with the following schedule: (a) an initial payment in the amount of $100,000 on or before February 15, 2005; (b) eleven (11) equal monthly payments in the amount of $153,951.05, commencing on March 15, 2005, and each subsequent payment on the fifteenth (15th) day of each month thereafter; and (c) a final payment of $153,950.99 on February 15, 2006. All accrued and unpaid interest hereon will be due and payable upon the day that all principal is due and payable (whether on the Maturity Date, by acceleration or otherwise).

All Payors' obligations and liabilities under this Note, whether or not expressly denominated as such, shall be joint and several.

This Note is executed and delivered pursuant to the terms of that certain Settlement Agreement dated as of the date hereof among the Bil-Ray Group and Payors (as it may be amended, restated, supplemented or otherwise modified in writing from time to time, the "Settlement Agreement").

The Payors' obligations under this Note shall be secured by the collateral set forth in that certain ship's mortgage, dated as of the date hereof (as it may be amended, restated, supplemented or otherwise modified from time to time in writing, the "Ship's Mortgage"). Payee's rights under the Ship's Mortgage are in addition to, and not exclusive of, all other rights and remedies available to Payee in the event of any Payor's default. Contemporaneously with the execution of this Promissory Note, Payors are executing Confessions of Judgment to be held in escrow by Payee's attorney. Payee's rights under the Confessions of Judgment are in addition to, and not exclusive of, all other rights and remedies available to Payee in the event of any

Payor's default.

Payment of both principal and interest on this Note shall be made to the Payee at 40 Elmont Road, Elmont, New York 11003 (or such other address as the Payee shall have designated in a written notice to the Payors at least [three] business days before a Payment Date) in lawful money of the United States of America in immediately available funds.

The Payors shall have the right to prepay this Note in whole or in part at any time, together with interest on the amount prepaid to the date of prepayment, without penalty or premium.

Upon the occurrence of any of the following events (an "Event of Default"), this Note shall become and be immediately due and payable in full without notice, together with all interest accrued and unpaid hereon:

i.    the Payors shall fail to make any payment hereunder when due and payable;

ii.    the Payors shall become insolvent, or generally fail to pay, or admit in writing their inability to pay, their debts as they become due, or shall voluntarily commence any proceeding or file any petition under any bankruptcy, insolvency or similar federal, state or foreign law or seeking dissolution, liquidation or reorganization or the appointment of a receiver, trustee, custodian or liquidator for them or a substantial portion of their property, assets or business or to effect a plan or other arrangement with their creditors, or shall file any answer admitting the jurisdiction of the court and the material allegations of an involuntary petition filed against them in any bankruptcy, insolvency or similar proceeding, or shall be adjudicated bankrupt, or shall make a general assignment for the benefit of creditors, or shall consent to, or acquiesce in the appointment of, a receiver, trustee, custodian or liquidator for a substantial portion of their property, assets or business, or shall by any act or failure to act indicate their consent to or approval of any of the foregoing, or if any corporate action is taken by the Payors for the purpose of effecting any of the foregoing; or

iii.    involuntary proceedings or an involuntary petition shall be commenced or filed against the Payors under any bankruptcy, insolvency or similar federal, state or foreign law or seeking the dissolution, liquidation or reorganization of them or the appointment of a receiver, trustee, custodian or liquidator for them or of a substantial part of their property, assets or business, and such proceedings or petition shall not be dismissed or stayed within sixty (60) days; or any writ, judgment, tax lien, warrant of attachment, execution or similar process shall be issued or levied against a substantial part of their property, assets or business, and such writ, judgment, lien, warrant of attachment, execution or similar process shall not be released, vacated, stayed, or fully bonded, within sixty (60) days after commencement, filing or levy, as the case may be, or any order for relief shall be entered in any such proceeding; or any winding-up, dissolution, liquidation or reorganization of the Payors. Notwithstanding any provision to the contrary contained herein, the rights of the Payee to take any and all action it deems proper or desirable in its sole discretion in order to preserve or protect its rights or remedies with respect to this Note, the Settlement Agreement, the Ship's Mortgage, the Confessions of Judgment, or any

other document executed in connection therewith, or the collateral set forth in the Ship's Mortgage, shall not be affected by the occurrence of any of the events specified in this clause (iii).

      iv.    an Event of Default shall have occurred under the Settlement Agreement.

Each of the Payors waive presentment, demand, protest, dishonor and all other notices and demands in connection with the delivery, acceptance, performance, default, enforcement or endorsement of this Promissory Note.

This Note shall be binding upon, and shall inure to the benefit of, the Payors and the Payee and their respective successors and assigns; provided, however, that the Payors shall not assign their rights or obligations hereunder without the prior written consent of the Payee, which Payee shall give or deny in its sole discretion. This Note may be freely assigned by the Payee without the consent of the Payors.

This Note may only be modified, amended, or terminated (other than by payment in full) by an agreement in writing signed by the Payors and the Payee. No waiver of any term, covenant or provision of this Note shall be effective unless given in writing by the Payee.

No failure on the part of Payee to exercise, and no delay in exercising any right hereunder, shall operate as a waiver thereof, nor shall any single or partial exercise by Payee of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The Payee or any other holder may accept late payments, or partial payments, even though marked "payment in full" or containing words of similar import or other conditions, without waiving any of its rights. This Note cannot be changed or terminated orally or by estoppel or waiver or by any alleged oral modification regardless of any claimed partial performance referable thereto.

The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

In no event shall the interest rate in this Note exceed the maximum interest rate permitted by applicable law. If, notwithstanding, interest in excess of said maximum rate shall be paid hereunder, the excess shall be retained in the Payee as a prepayment of all or part of the unpaid balance of principal.

If a court deems any provision of this Note invalid, the remainder of this Note shall remain in effect.

Should the indebtedness evidenced hereby or any part thereof be collected at law or in equity, or in bankruptcy, receivership or any other court proceeding (whether at the trial or appellate level), or should this Promissory Note be placed in the hands of attorneys for collection upon default, the Payors each agree, jointly and severally, to pay, in addition to all other sums properly due and payable hereunder, all costs and disbursements in collecting or attempting to collect such indebtedness, including reasonable attorneys' fees and expenses.

TIME IS OF THE ESSENCE, WITH RESPECT ALL TERMS OF THIS NOTE.

ANY ACTIONS, SUITS, OR PROCEEDINGS, IN RESPECT OF OR ARISING OUT OF THIS NOTE SHALL BE BROUGHT IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF NEW YORK, OR ANY OTHER COURT OF COMPETENT JURISDICTION, AND THE PARTIES CONSENT TO THE JURISDICTION OF SUCH COURTS. BY EXECUTION AND DELIVERY OF THIS NOTE THE PAYORS ACCEPT FOR THEMSELVES AND IN CONNECTION WITH THEIR PROPERTIES, THE JURISDICTION OF THE AFORESAID COURTS. PAYORS AND PAYEE EACH FURTHER IRREVOCABLY CONSENT TO SERVICE OF PROCESS IN ANY SUCH ACTION OR PROCEEDING BY THE MAILING (BY CERTIFIED MAIL RETURN RECEIPT REQUESTED) OF A COPY OF SUCH PROCESS TO PAYORS AT THE ADDRESSES SET FORTH ABOVE.

IN ANY ACTION, SUIT, OR PROCEEDING IN RESPECT OF OR ARISING OUT OF THIS NOTE, EACH PAYOR WAIVES (I) THE RIGHT TO INTERPOSE ANY SET-OFF OR COUNTERCLAIM OF ANY NATURE OR DESCRIPTION, (II) ANY OBJECTION BASED ON FORUM NON CONVENIENS, VENUE, OR PERSONAL JURISDICTION, (III) ANY CLAIM FOR CONSEQUENTIAL, PUNITIVE OR SPECIAL DAMAGES, AND (IV) TRIAL BY JURY.

THIS NOTE SHALL BE GOVERNED BY AND CONSTRUED IN ACCORDANCE WITH THE LAW OF THE STATE OF NEW YORK, WITHOUT REGARD TO ANY CHOICE OF LAW AND CONFLICTS OF LAW PRINCIPLES.

IN WITNESS WHEREOF, each of the Payors have executed this Note as of the day and year first above written.

AMERICAS HOME IMPROVEMENT COMPANY, LLC

By____________________________
Name: Gary Iskra
Title: President

____________________________
GARY ISKRA

____________________________
MARK ALOE

STATE OF PENNSYLVANIA )
) ss.:
COUNTY OF ALLEGHENY )

On the 23 day of December, 2004, before me personally came Gary Iskra, who, being duly sworn, did depose and say that he resides in Ligonier, Pennsylvania; that he is the President of America's Home Improvement Company, LLC, the corporation described in and which executed the above instrument; and that he signed his name thereto by order of the board of directors of said corporation.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kendra J. Jenkins, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires Jan. 12, 2008
Member, Pennsylvania Association Of Notaries

Notary Public

STATE OF PENNSYLVANIA )
) ss.:
COUNTY OF ALLEGHENY )

On the 23 day of December, 2004, before me, the undersigned, personally appeared Gary Iskra, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his individual capacity.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kendra J. Jenkins, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires Jan. 12, 2008
Member, Pennsylvania Association Of Notaries

Notary Public

STATE OF P PENNSYLVANIA )
) ss.:
COUNTY OF ALLEGHENY )

On the 23 day of December, 2004, before me, the undersigned, personally appeared Mark Aloe, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his individual capacity.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kendra J. Jenkins, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires Jan. 12, 2008
Member, Pennsylvania Association Of Notaries

Notary Public

SCHEDULE OF PAYMENTS

| Date | Opening Balance | Accrued Interest | Payment | Closing Balance |
|---|---|---|---|---|
| 12/15/2004 | | | | 1,870,000.00 |
| 1/15/2005 | 1,870,000.00 | 9,350.00 | 0.00 | 1,879,350.00 |
| 2/15/2005 | 1,879,350.00 | 9,396.75 | 100,000.00 | 1,788,746.75 |
| 3/15/2005 | 1,788,746.75 | 8,943.73 | 153,951.05 | 1,643,739.43 |
| 4/15/2005 | 1,643,739.43 | 8,218.70 | 153,951.05 | 1,498,007.08 |
| 5/15/2005 | 1,498,007.08 | 7,490.03 | 153,951.05 | 1,351,546.06 |
| 6/15/2005 | 1,351,546.07 | 6,757.73 | 153,951.05 | 1,204,352.74 |
| 7/15/2005 | 1,204,352.75 | 6,021.76 | 153,951.05 | 1,056,423.45 |
| 8/15/2005 | 1,056,423.46 | 5,282.12 | 153,951.05 | 907,754.52 |
| 9/15/2005 | 907,754.53 | 4,538.77 | 153,951.05 | 758,342.24 |
| 10/15/2005 | 758,342.25 | 3,791.71 | 153,951.05 | 608,182.90 |
| 11/15/2005 | 608,182.91 | 3,040.91 | 153,951.05 | 457,272.76 |
| 12/15/2005 | 457,272.78 | 2,286.36 | 153,951.05 | 305,608.07 |
| 1/15/2006 | 305,608.09 | 1,528.04 | 153,951.05 | 153,185.06 |
| 2/15/2006 | 153,185.08 | 765.93 | 153,950.99 | 0.00 |

## SECOND PREFERRED MORTGAGE

This Second Preferred Mortgage (this "Mortgage") is made as of December 23, 2004 and is a "preferred mortgage", as that term is defined and described in Title 46, United States Code, Chapter 313, on the whole (100%) of the vessel named "DIRECT SAIL", U.S. Coast Guard Official No. 983900, Hull Identification No. HRH59012k192, and further described in Section 3 herein (the "Vessel"). The amount of the direct or contingent obligations that are or that may become secured by this Mortgage is One Million Eight Hundred Seventy Thousand United States Dollars ($1,870,000) in principal (exclusive of interest, expenses and fees). This Mortgage also secures the payment of interest, and the full performance of all of the other terms and conditions of this Mortgage, the Note and the Limited Guaranty, which Note and Limited Guaranty are defined in Section 2 herein.

It is hereby agreed by the undersigned as follows:

1. Parties and Interest(s) Owned/Granted.

(a) MORTGAGOR: The individuals identified below,

GARY J. ISKRA, 464 Meyers School Rd, Ligonier, Pennsylvania 15658; and

DEBORAH L. ISKRA, Route 1, Hidden Hollow Farm, Ligonier, Pennsylvania 15658;

are referred to in this Mortgage (individually, collectively, jointly and severally) as the "Mortgagor," and own the whole (100%) of the Vessel as joint tenants with right of survivorship.

NATIONAL VESSEL DOCUMENTATION CENTER
USCG
RECEIVED/FILED
03 JAN '05 10:45 AM
LOCATOR NUMBER
05-14 285

(b) MORTGAGEE: The individuals identified below,

CHARLES G. LEPORIN, 27 Swarthmore Lane, Dix Hills, New York 11746; and

FERNANDO L. ASSINI, 3379 Harbor Point Road, Baldwin, New York 11510;

and the corporations identified below,

BIL-RAY HOME IMPROVEMENTS AND CONTRACTING CORP. OF BRONX, NEW YORK, 40 Elmont Road, Elmont, New York 11003; and

BIL-RAY ALUMINUM SIDING CORP. OF QUEENS, INC., 40 Elmont Road, Elmont, New York 11003;

are referred to in this Mortgage (individually, collectively, jointly and severally) as the

COPY

"Mortgagee" and are granted a preferred mortgage in the whole (100%) of the Vessel.

2. Note/Limited Guaranty. Pursuant to that certain Promissory Note dated as of December 23, 2004 (as it may be amended, restated, supplemented or otherwise modified from time to time in writing, the "Note") by Gary J. Iskra, Mark Aloe and America's Home Improvement Company, LLC, a Delaware limited liability company, (the "Debtors") in favor of the Mortgagee, the form of which is attached hereto as Exhibit A and incorporated herein by reference, the Debtors agreed to pay to Mortgagee the principal sum of One Million Eight Hundred Seventy Thousand United States Dollars ($1,870,000) in accordance with the terms of the Note. Any capitalized terms used in this Mortgage that are not otherwise defined herein shall have the meanings ascribed to them in the Note. The Note is being made by the Debtors to the order of the Mortgagee pursuant to that certain Settlement Agreement dated as of the date hereof among the Debtors, the Mortgagee and Pacesetter Corporation. Deborah L. Iskra has guaranteed the obligations of the Debtors to the Mortgagee pursuant to that certain Limited Guaranty dated as of the date hereof executed by Deborah L. Iskra for the benefit of the Mortgagee (as it may be amended, restated, supplemented or otherwise modified from time to time in writing, the "Limited Guaranty").

3. Description and Definition of Vessel. The Vessel covered by this Mortgage is described as follows:

| | |
|---|---|
| Name of Vessel: | DIRECT SAIL, (formerly named Phantaseas) |
| U.S.C.G. Official No.: | 983900 |
| Hailing Port: | Annapolis, Maryland |
| Hull I.D. No.: | HRH59012k192 |
| Place Issued: | National Vessel Documentation Center |
| Registered Gross Tons: | 35.0 |
| Registered Net Tons: | 31.0 |

together with all permanently-installed equipment, all of which shall be deemed to be included in the term "Vessel."

4. Obligations Secured. Gary J. Iskra is justly indebted to Mortgagee, as evidenced by the Note, in the principal amount of One Million Eight Hundred Seventy Thousand United States Dollars ($1,870,000), payable to the order of Mortgagee as set forth in the Note and Deborah L. Iskra is justly indebted to Mortgagee, as evidenced by the Limited Guaranty. This Mortgage secures the payment and performance of the outstanding principal balance under the Note and interest accrued thereon and all other obligations of Mortgagor under this Mortgage, the Note and the Limited Guaranty. All such payment and performance obligations of Mortgagor are herein collectively referred to as the "Obligations" and are secured by this Mortgage.

5. Agreement to Pay and Perform. Mortgagor agrees to pay and perform all of the Obligations and to perform and observe the terms and agreements in this Mortgage.

6. Grant of Mortgage. In consideration of the premises and for other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, to secure payment and performance of all of the Obligations, and subject to the terms and conditions contained in this Mortgage, Mortgagor hereby grants, mortgages and conveys unto Mortgagee, its successors and assigns, the whole (100%) of the Vessel, together with all of the masts, bowsprit, boats, anchors, cables, chains, rigging, tackle, apparel, furniture, and all other necessaries thereunto appertaining and belonging.

SUBJECT, HOWEVER, to the lien and the operation of that certain preferred mortgage dated as of September 15, 1998 (the "Prior Mortgage") in favor of Dollar Bank, Federal Savings Bank (the "Prior Mortgagee") over the Vessel and recorded with the National Vessel Documentation Center on September 22, 1998 at Book 98-84, Page 177.

PROVIDED, HOWEVER, that if Mortgagor, its successors or assigns, shall pay and perform all of the Obligations and perform and observe all the terms and agreements herein, then the Mortgagee agrees to release the Mortgage.

7. Displaying Notice and Exhibiting Preferred Mortgage. Mortgagor shall keep a proper copy of this Mortgage with the Vessel's papers and show this Mortgage to all persons having business with the Vessel and shall place and keep prominently displayed in the pilot house (if any), chart room, master's cabin, or elsewhere on the Vessel as specified by Mortgagee, a notice of this Mortgage reading as follows:

NOTICE OF PREFERRED MORTGAGE

> NOTICE IS HEREBY GIVEN THAT this Vessel is subject to a preferred mortgage in favor of Dollar Bank, Federal Savings Bank, and a second preferred mortgage in favor of Charles G. Leporin, Fernando L. Assini, Bil-Ray Home Improvements and Contracting Corp. of Bronx, New York and Bil-Ray Aluminum Siding Corp. of Queens, Inc. each of which mortgage constitutes a "preferred mortgage" under the authority of the laws of the United States of America, Title 46, United States Code, Chapter 313, Sections 31301 and following. Under the terms of said preferred mortgages, neither the owner, agent, any charterer, nor the master of the Vessel, nor any other person has any right, power or authority to create, incur or permit to be imposed upon this Vessel any lien whatsoever other than for crew's wages or, in an emergency, for salvage.

8. Prior Mortgage. So long as the Prior Mortgage is outstanding, this Mortgage is only a junior mortgage and all provisions hereof shall be construed accordingly. Anything herein to the contrary notwithstanding, this Mortgage is subject to the Prior Mortgage and the rights and powers granted to the Mortgagee herein are subject and are subordinate to the corresponding rights and powers granted to the Prior Mortgagee under the Prior Mortgage and may not be exercised in such a manner as to impair or prejudice such rights and powers under the Prior

Mortgage.

To the extent that the provisions of the Prior Mortgage require the Mortgagor to do something prohibited hereby, or to refrain from doing something required hereby, or require a distribution of funds other than as provided herein, the Mortgagor shall incur no default hereunder by complying with such provisions of such Prior Mortgage. The foregoing shall not, however, relieve the Mortgagor from the obligation of complying with the provisions of this Mortgage to the extent that they require different or additional performance than that required by the Prior Mortgage, so long as the same is not inconsistent with the Prior Mortgage and does not require performance that would result in a default under the Prior Mortgage. This Mortgage has the right of succession on payment or discharge of the Prior Mortgage.

9. Recovery of Personal Belongings. If this Mortgage is enforced by repossession of the Vessel, Mortgagor may claim any nonperishable personal belongings not covered by this Mortgage that were in or on the Vessel at the time of repossession.

10. Compliance with Laws and Regulations. Mortgagor shall comply with and not permit the Vessel to be operated contrary to any applicable provision of the laws, treaties, conventions, rules, regulations or orders of the United States, or of any State or of any foreign country or other jurisdiction wherein operated, or of any department or agency thereof.

11. Governing Law. The parties have chosen federal law applicable to preferred mortgages and related promissory notes and other documents, including, but not limited to, Title 46, Subtitle III, Chapter 313 of the United States Code, "Commercial Instruments and Maritime Liens" (46 U.S.C. § 31301 and the sections following) to govern this Mortgage. The interest rate and other finance charge provisions of the Note and this Mortgage have been freely chosen by Mortgagee and Mortgagor as permitted by 46 U.S.C. § 31322(b) and no state law is applicable thereto. If there are substantive issues other than those relating to interest or finance charges on which there is no established federal law and which cannot be resolved without reference to some law other than federal law, then and to such extent, the law of the State of New York shall be applicable to this transaction.

12. Invalid Provisions Separable. If any clause, provision or portion of this Mortgage shall be invalidated by any statute or any decision of any court, the invalidity shall not affect other provisions, clauses, or terms hereof which can be given effect without the invalid provision.

13. Amendments. No amendment of this Mortgage will be valid unless in writing and signed by both Mortgagor and Mortgagee.

14. Notices. Any notice required or permitted to be given hereunder shall be deemed properly given: (a) upon delivery, if delivered in person or by commercial courier, (b) upon completion of transmission if sent by facsimile transmission (telefax), or (c) five (5) days after mailing by first class or registered or certified mail, postage prepaid, addressed to the recipient at the address specified in Section 1 of this Mortgage, or to such other address as such party may have designated by written notice given to the other.

15. Conflict or Inconsistency of Terms. This Mortgage, the Note and the Limited Guaranty shall be construed consistently with one another to the extent possible. In the event of any irreconcilable conflict among the terms of this Mortgage, the terms of the Note, the terms of the Limited Guaranty or any other document related to this transaction, the terms of this Mortgage shall control to the extent of the conflict.

16. Integrated Agreement. This Mortgage, the Note, the Limited Guaranty and any other documents required by Mortgagee and executed and delivered by Mortgagor, constitute the entire agreement between Mortgagee and Mortgagor with respect to the subject matter hereof. There are no oral representations, warranties or agreements between Mortgagee and Mortgagor, nor do any prior negotiations or statements made constitute part of this Mortgage unless reduced to writing and incorporated herein.

17. Counterpart Signatures. This Mortgage may be executed in any number of counterparts, and all such counterparts executed and delivered, each as an original, shall constitute but one and the same instrument.

18. Preferred Status. No part of this Mortgage shall be construed as a waiver of the preferred status of this Mortgage. The Mortgagor hereby represents that: (a) the Vessel is documented in compliance with the requirements of 46 U.S.C., Section 12101, et. seq., as amended, and Mortgagor shall cause the Vessel to continue to be so documented until all Obligations secured by this Mortgage have been fully paid; (b) if at the time of execution of this Mortgage, the Vessel is not documented as provided for in this Section, either Mortgagor or an attorney-in-fact appointed by Mortgagor will file, prior to or simultaneously with the filing of this Mortgage, an application for documentation that complies with the requirements of 46 U.S.C., Section 12101, et. seq., as amended and regulations thereunder. Upon issuance of a certificate of documentation, Mortgagor shall cause the Vessel to continue to be so documented until all Obligations secured by this Mortgage have been fully paid.

19. Other Liens: Representation, Warranty and Covenant. The Mortgagor hereby represents and warrants to the Mortgagee that it is the lawful owner of the vessel and that the lien being granted on the Vessel pursuant to this Mortgage is a first priority lien, subject only to the prior lien of the Prior Mortgagee granted to the Mortgagor pursuant to the Prior Mortgage, crew's wages, and, in an emergency, for salvage and to no other lien. The Mortgagor hereby covenants and agrees that it shall not grant any other lien on the Vessel so long as there are any obligations due and owing from the Mortgagor to the Mortgagee pursuant to the Note, this Mortgage, the Limited Guaranty or any other document executed in connection therewith.

20. Default. In the event Mortgagor defaults in performance of the Obligations, or if Mortgagor shall sell or attempt to sell the Vessel, or any part thereof, or if the same shall be levied upon or taken by virtue of any attachment or execution against Mortgagor, or if Mortgagor shall remove, or attempt to remove, said Vessel from its documentation under the laws and flag of the United States of America, or if Mortgagor shall grant any other person a security interest in the Vessel to secure any other indebtedness of the Mortgagor in any amount, other than this Mortgage, or if the Mortgagor shall negligently or willfully permit said Vessel to waste, or be

materially damaged or destroyed, said Mortgagee is hereby authorized, subject to the Prior Mortgage, to take possession of said Vessel at any time, wherever found, and to sell and convey the same, or so much thereof as may be necessary to satisfy the Obligations, interest, costs and expenses, after first giving a notice of ten (10) days, to be given by publication in a newspaper published in Long Island, N.Y., and to retain the same out of the proceeds of such sale; the surplus (if any) to belong to and be returned to the said Mortgagor. Mortgagee and its agents are irrevocably appointed Mortgagor's true and lawful attorneys-in-fact to make all necessary transfers of the Vessel in Mortgagor's name and for Mortgagor after Mortgagee's taking possession of the Vessel pursuant to the terms of this Mortgage. Any default described in this Paragraph 20 shall constitute an Event of Default under the terms of the Note.

And it is agreed that upon such sale the Mortgagee or the Mortgagee's, successors or assigns, may become the purchasers.

Mortgagee may delay in enforcing any of its right without losing any of them.

21. And the Mortgagor does further covenant and agree, to and with the Mortgagee and the Mortgagee's successors and assigns, that the Mortgagor will maintain at least the same amount and kind of insurance as he held as of December 1, 2004. He shall add Mortgagees as additional insureds and as additional loss payees on any insurance policy covering the Vessel and provide an insurance certificate specifying such coverage. In the event of cancellation of the insurance for any reason, Mortgagor will provide prompt notice of cancellation and make all effort to cause the insurance to be reinstated or replaced with coverage in comparable amount and carrier.

IN WITNESS WHEREOF, as of the day and year written at the beginning of this Second Preferred Mortgage, each Mortgagor has executed this Second Preferred Mortgage.

MORTGAGOR:

By: ______________________
Name: GARY J. ISKRA

By: ______________________
Name: DEBORAH L. ISKRA

ACKNOWLEDGMENTS

STATE OF PENNSYLVANIA )
) ss.:
COUNTY OF ALLEGHENY )

BE IT REMEMBERED, that on the 23rd day of December, 2004, before me, the undersigned, a Notary Public, duly qualified, commissioned, sworn and acting in and for the County and State aforesaid, personally appeared GARY J. ISKRA, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the foregoing Second Preferred Mortgage and acknowledged to me that he executed the same in his capacity as Mortgagor described in the foregoing Second Preferred Mortgage, and that by his signature on the instrument, the individual executed the instrument.

Witness my hand and official seal.

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kendra J. Jenkins, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires Jan. 12, 2008
Member, Pennsylvania Association Of Notaries

NOTARY PUBLIC

My Commission expires:

_______________ 20__

STATE OF PENNSYLVANIA )
) ss.:
COUNTY OF ALLEGHENY )

BE IT REMEMBERED, that on the 23rd day of December, 2004, before me, the undersigned, a Notary Public, duly qualified, commissioned, sworn and acting in and for the County and State aforesaid, personally appeared DEBORAH L. ISKRA, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the foregoing Second Preferred Mortgage and acknowledged to me that she executed the same in her capacity as Mortgagor described in the foregoing Second Preferred Mortgage, and that by her signature on the instrument, the individual executed the instrument.

Witness my hand and official seal.

NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kendra J. Jenkins, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires Jan. 12, 2008
Member, Pennsylvania Association Of Notaries

My Commission expires:

_______________ 20__

#301558v5

**LIMITED GUARANTY**

New York, New York
December 23, 2004

This Limited Guaranty ("Guaranty"), dated as of December 23, 2004, is made by Deborah L. Iskra (hereinafter, whether one or more, called the "Guarantor," who, if two or more in number, shall be jointly and severally bound) for the benefit of Charles G. Leporin, an individual, Ferdinando L. Assini, an individual, Bil-Ray Home Improvements and Contracting Corp. of Bronx, New York and Bil-Ray Aluminum Siding Corp. of Queens, Inc. (collectively, the "Bil-Ray Group").

The Bil-Ray Group, America's Home Improvement, LLC ("America's"), Gary Iskra, an individual ("Iskra"), Mark Aloe, an individual ("Aloe") and Pacesetter Corporation ("Pacesetter") (America's, Iskra and Aloe are collectively, the "Maker") are parties to a Settlement Agreement of even date herewith (as the same may be amended, supplemented or restated from time to time, the "Settlement Agreement").

The Maker executed a Promissory Note dated the date hereof in the principal amount of $1,870,000 to the order of the Bil-Ray Group with respect to certain obligations of the Maker to the Bil-Ray Group pursuant to the Settlement Agreement.

As a condition to entering into the Settlement Agreement with the Maker and Pacesetter, the Bil-Ray Group has required the execution and delivery of this Guaranty.

ACCORDINGLY, the Guarantor, in consideration of the premises and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, hereby agrees as follows:

1. Definitions. All capitalized terms used herein and not otherwise defined herein shall have the meanings given them in the Settlement Agreement or the Note.

2. Obligations Guaranteed. Subject to Section 16 hereof, the Guarantor hereby absolutely and unconditionally guarantees to the Bil-Ray Group the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of the obligations of the Maker to the Bil-Ray Group pursuant to the Promissory Note (the "Obligations").

3. Unconditional Guaranty. No act or thing need occur to establish the liability of the Guarantor hereunder, and no act or thing, except full payment and discharge of all of the Obligations, shall in any way exonerate the Guarantor hereunder or modify, reduce, limit or release the Guarantor's liability hereunder. Subject to Section 16 hereof, this is an absolute, unconditional and continuing guaranty of payment of the Obligations and shall continue to be in force and be binding upon the Guarantor, until all of the Obligations are paid in full. The death or incompetence of the Guarantor shall not revoke this Guaranty.

302387v1
Document

Exhibit "3"

4. Death or Insolvency of Guarantor. If the Guarantor shall die or shall be or become insolvent (however defined), then the Bil-Ray Group shall have the right to declare immediately due and payable, and the Guarantor will forthwith pay to the Bil-Ray Group, the full amount of all of the Obligations whether due and payable or unmatured. If the Guarantor voluntarily commences or there is commenced involuntarily against the Guarantor a case under the United States Bankruptcy Code, the full amount of all of the Obligations, whether due and payable or unmatured, shall be immediately due and payable without demand or notice thereof.

5. Security Pledged. As collateral security for the Obligations or liability of the Guarantor under this Guaranty, whether present or future, absolute or contingent, due or not due, the Guarantor hereby grants to Bil-Ray Group all of its right, title and interest in and to the vessel known as "Direct Sale", United States Coast Guard Official Number 983900, Hailing Port, Annapolis, Maryland, Hull Identification Number HRH59012K192 (the "Collateral") subject to the lien in favor of Dollar Bank, Federal Savings Bank.

6. Subrogation, etc. The Guarantor hereby waives all rights that the Guarantor may now have or hereafter acquire, whether by subrogation, contribution, reimbursement, recourse, exoneration, contract or otherwise, to recover from the Maker or from any property of the Maker any sums paid under this Guaranty. The Guarantor will not exercise or enforce any right of contribution to recover any such sums from any person who is a co-obligor with the Maker or a guarantor or surety of the Obligations or from any property of any such person until all of the Obligations shall have been fully paid and discharged.

7. Intentionally Omitted.

8. The Bil-Ray Group's Rights. The Bil-Ray Group shall not be obligated by reason of its acceptance of this Guaranty to engage in any transactions with or for the Maker. Whether or not any existing relationship between the Guarantor and the Maker has been changed or ended, the Bil-Ray Group may enter into transactions resulting in the creation or continuance of the Obligations and may otherwise agree, consent to or suffer the creation or continuance of any of the Obligations, without any consent or approval by the Guarantor and without any prior or subsequent notice to the Guarantor. The Guarantor's liability shall not be affected or impaired by any of the following acts or things (which the Bil-Ray Group is expressly authorized to do, omit or suffer from time to time, without consent or approval by or notice to the Guarantor): (i) any acceptance of collateral security, guarantors, accommodation parties or sureties for any or all of the Obligations; (ii) one or more extensions or renewals of the Obligations (whether or not for longer than the original period) or any modification of the interest rates, maturities, if any, or other contractual terms applicable to any of the Obligations or any amendment or modification of any of the terms or provisions of any other agreement under which the Obligations or any part thereof arose; (iii) any waiver or indulgence granted to the Maker, any delay or lack of diligence in the enforcement of the Obligations or any failure to institute proceedings, file a claim, give any required notices or otherwise protect any of the Obligations; (iv) any full or partial release of, compromise or settlement with, or agreement not to sue, the Maker or any guarantor or other person liable in respect of any of the Obligations; (v) any release, surrender, cancellation or other discharge of any evidence of the Obligations or the acceptance of any instrument in renewal or substitution therefor; (vi) any failure to obtain collateral security (including rights of setoff) for the Obligations, or to see to the proper or sufficient creation and perfection thereof, or to

establish the priority thereof, or to preserve, protect, insure, care for, exercise or enforce any collateral security; or any modification, alteration, substitution, exchange, surrender, cancellation, termination, release or other change, impairment, limitation, loss or discharge of any collateral security; (vii) any collection, sale, lease or disposition of, or any other foreclosure or enforcement of or realization on, any collateral security, except for the Collateral; (viii) any assignment, pledge or other transfer of any of the Obligations or any evidence thereof; (ix) any manner, order or method of application of any payments or credits upon the Obligations; and (x) any election by the Bil-Ray Group under Section 1111(b) of the United States Bankruptcy Code. The Guarantor waives any and all defenses and discharges available to a surety, guarantor or accommodation co-obligor.

        9.    Waivers by Guarantor. The Guarantor waives any and all defenses, claims, setoffs and discharges of the Maker, or any other obligor, pertaining to the Obligations, except the defense of discharge by payment in full. Without limiting the generality of the foregoing, the Guarantor will not assert, plead or enforce against the Bil-Ray Group any defense of waiver, release, discharge or disallowance in bankruptcy, statute of limitations, res judicata, statute of frauds, anti-deficiency statute, fraud, incapacity, minority, usury, illegality or unenforceability which may be available to the Maker or any other person liable in respect of any of the Obligations, or any setoff available against the Bil-Ray Group to the Maker or any other such person, whether or not on account of a related transaction. The Bil-Ray Group expressly agrees that the Guarantor shall not be nor remain liable for any deficiency remaining after foreclosure of the Collateral securing the Obligations, whether or not the liability of the Maker or any other obligor for such deficiency is discharged pursuant to statute or judicial decision. The liability of the Guarantor shall not be affected or impaired by any voluntary or involuntary liquidation, dissolution, sale or other disposition of all or substantially all the assets, marshalling of assets and liabilities, receivership, insolvency, bankruptcy, assignment for the benefit of creditors, reorganization, arrangement, composition or readjustment of, or other similar event or proceeding affecting, the Maker or any of its assets. The Guarantor will not assert, plead or enforce against the Bil-Ray Group any claim, defense or setoff available to the Guarantor against the Maker. The Guarantor waives presentment, demand for payment, notice of dishonor or nonpayment and protest of any instrument evidencing the Obligations. The Bil-Ray Group shall not be required first to resort for payment of the Obligations to the Maker or other persons, or their properties, or first to enforce, realize upon or exhaust any collateral security for Obligations, before enforcing this Guaranty.

        10.    If Payments Set Aside, etc. If any payment applied by the Bil-Ray Group to the Obligations is thereafter set aside, recovered, rescinded or required to be returned for any reason (including, without limitation, the bankruptcy, insolvency or reorganization of the Maker or any other obligor), the Obligations to which such payment was applied shall for the purpose of this Guaranty be deemed to have continued in existence, notwithstanding such application, and this Guaranty shall be enforceable as to such Obligations as fully as if such application had never been made.

        11.    Intentionally Omitted.

        12.    Intentionally Omitted.

13. No Duties Owed by Bil-Ray Group. The Guarantor acknowledges and agrees that the Bil-Ray Group (i) has not made any representations or warranties with respect to, (ii) does not assume any responsibility to the Guarantor for, and (iii) has no duty to provide information to the Guarantor regarding, the enforceability of any of the Obligations or the financial condition of the Maker or any guarantor. The Guarantor has independently determined the creditworthiness of the Maker and the enforceability of the Obligations and until the Obligations are paid in full will independently and without reliance on the Bil-Ray Group continue to make such determinations.

14. Miscellaneous. This Guaranty shall be effective upon delivery to the Bil-Ray Group, without further act, condition or acceptance by the Bil-Ray Group, shall be binding upon the Guarantor and the heirs, representatives, successors and assigns of the Guarantor and shall inure to the benefit of the Bil-Ray Group and its participants, successors and assigns. Any invalidity or unenforceability of any provision or application of this Guaranty shall not affect other lawful provisions and application thereof, and to this end the provisions of this Guaranty are declared to be severable. This Guaranty may not be waived, modified, amended, terminated, released or otherwise changed except by a writing signed by the Guarantor and the Lender. This Guaranty shall be governed by and construed in accordance with the substantive laws (other than conflict laws) of the State of New York. The Guarantor hereby (i) consents to the personal jurisdiction of the state and federal courts located in the State of New York in connection with any controversy related to this Guaranty; (ii) waives any argument that venue in any such forum is not convenient, (iii) agrees that any litigation initiated by the Lender or the Guarantor in connection with this Guaranty may be venued in the state or federal courts located in Kings or Nassau County, New York; and (iv) agrees that a final judgment in any such suit, action or proceeding shall be conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.

15. Waiver of Jury Trial. THE GUARANTOR HEREBY IRREVOCABLY WAIVES ALL RIGHTS TO TRIAL BY JURY IN ANY ACTION, PROCEEDING OR COUNTERCLAIM ARISING OUT OF, BASED ON OR PERTAINING TO THIS GUARANTY.

16. Recourse. Notwithstanding any other provision of this Guaranty, the recourse to Guarantor hereunder shall be limited to the Guarantor's interest in the Collateral, and the Bil-Ray Group acknowledges that it shall have no further recourse to, or claim for deficiency against, the Guarantor.

IN WITNESS WHEREOF, this Guaranty has been duly executed by the Guarantor as of the date first written above.

Deborah L. Iskra

Address:

464 Myers School Rd
Ligonier, PA 15658

Soc. Sec. No.: 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

STATE OF PENNYSLVANIA )
) ss.:
COUNTY OF ALLEGHENY )

On the 23rd day of December, 2004, before me, the undersigned, personally appeared Deborah Iskra, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his individual capacity.

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Kendra J. Jenkins, Notary Public
City Of Pittsburgh, Allegheny County
My Commission Expires Jan. 12, 2008
Member, Pennsylvania Association Of Notaries

JS 44 (Rev. 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS

_(handwritten, illegible)_

**(b)** County of Residence of First Listed Plaintiff _(handwritten)_
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
_(handwritten)_

## DEFENDANTS

_(handwritten, illegible)_

County of Residence of First Listed Defendant _(handwritten)_
(IN U.S. PLAINTIFF CASES ONLY)

NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)

05 11464 DPW

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1  U.S. Government Plaintiff
- ☐ 3  Federal Question (U.S. Government Not a Party)
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

|                                | PTF | DEF |                                                            | PTF | DEF |
|--------------------------------|-----|-----|------------------------------------------------------------|-----|-----|
| Citizen of This State          | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State  | ☐ 4 | ☐ 4 |
| Citizen of Another State       | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☑ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation                                    | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☑ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☑ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity): _(handwritten)_

Brief description of cause: _(handwritten)_

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $ _(handwritten)_

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☐ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

(See instructions):  JUDGE _____  DOCKET NUMBER _____

DATE _(handwritten)_

SIGNATURE OF ATTORNEY OF RECORD _(handwritten)_

**FOR OFFICE USE ONLY**

RECEIPT # _____  AMOUNT _____  APPLYING IFP _____  JUDGE _____  MAG. JUDGE _____

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

1. Title of case (name of first party on each side only) Leperm v. Dir. Dept. [illegible]

2. Category in which the case belongs based upon the numbered nature of suit code listed on the civil cover sheet. (See local rule 40.1(a)(1)).

___ I. 160, 410, 470, 535, R.23, REGARDLESS OF NATURE OF SUIT.

___ II. 195, 196, 368, 400, 440, 441-446, 540, 550, 555, 625, 710, 720, 730, 740, 790, 791, 820*, 830*, 840*, 850, 890, 892-894, 895, 950. *Also complete AO 120 or AO 121 for patent, trademark or copyright cases

X III. 110, 120, 130, 140, 151, 190, 210, 230, 240, 245, 290, 310, 315, 320, 330, 340, 345, 350, 355, 360, 362, 365, 370, 371, 380, 385, 450, 891.

___ IV. 220, 422, 423, 430, 460, 480, 490, 510, 530, 610, 620, 630, 640, 650, 660, 690, 810, 861-865, 870, 871, 875, 900.

___ V. 150, 152, 153.

05 11464 DPW

3. Title and number, if any, of related cases. (See local rule 40.1(g)). If more than one prior related case has been filed in this district please indicate the title and number of the first filed case in this court.

4. Has a prior action between the same parties and based on the same claim ever been filed in this court?

YES ☐ NO ☒

5. Does the complaint in this case question the constitutionality of an act of congress affecting the public interest? (See 28 USC §2403)

YES ☐ NO ☒

If so, is the U.S.A. or an officer, agent or employee of the U.S. a party?

YES ☐ NO ☐

6. Is this case required to be heard and determined by a district court of three judges pursuant to title 28 USC §2284?

YES ☐ NO ☒

7. Do all of the parties in this action, excluding governmental agencies of the united states and the Commonwealth of Massachusetts ("governmental agencies"), residing in Massachusetts reside in the same division? - (See Local Rule 40.1(d)).

YES ☐ NO ☒

A. If yes, in which division do all of the non-governmental parties reside?

Eastern Division ☐ Central Division ☐ Western Division ☐

B. If no, in which division do the majority of the plaintiffs or the only parties, excluding governmental agencies, residing in Massachusetts reside?

Eastern Division ☐ Central Division ☐ Western Division ☐

8. If filing a Notice of Removal - are there any motions pending in the state court requiring the attention of this Court? (If yes, submit a separate sheet identifying the motions)

YES ☐ NO ☒

(PLEASE TYPE OR PRINT)

ATTORNEY'S NAME Thomas Clinton

ADDRESS Clinton & Muzyka One Washington Mall

TELEPHONE NO. Boston MA 02108 617 723 9165

(CategoryForm.wpd -5/2/05)