## FIRST PREFERRED SHIP MORTGAGE

**THIS FIRST PREFERRED SHIP MORTGAGE** dated September 15, 1998, from GARY J. ISKRA and DEBORAH L. ISKRA, Joint Tenants with Right of Survivorship (100%), husband and wife, both with an address c/o RD 1 Box 299, Meyer School Road, Ligonier, Pennsylvania 15658 (collectively, "Mortgagor"), to DOLLAR BANK, FEDERAL SAVINGS BANK, a federal savings bank, whose address is Three Gateway Center, 10 South, Pittsburgh, Pennsylvania 15222 ("Mortgagee").

### WITNESSETH:

**WHEREAS**, concurrently herewith, Mortgagee has made a loan to Mortgagor in the principal amount of EIGHT HUNDRED FIFTY THOUSAND DOLLARS ($850,000) (the "Loan") to be evidenced by a Term Loan Note and by this reference made a part hereof, dated of even date herewith (said Note, as the same may be amended, supplemented or otherwise modified, replaced or refinanced from time to time, being hereinafter called the "Note") a copy of the form of which Note is attached hereto as Exhibit "A"; and

**WHEREAS**, Mortgagor has used the proceeds of the Loan to purchase, and Mortgagor is now the sole owner of the whole of, the vessel identified as PHANTASEAS (ex. CAROUSEL), Official Number 983900, being further described as a 1992 Hinckley Sou'wester 59, duly documented in the name of the Mortgagor under the laws of the United States, having its home port at Annapolis, Maryland (the "Vessel");

**WHEREAS**, as a condition to the making of the Loan, Mortgagor has agreed to execute and deliver to Mortgagee, among other things, this First Preferred Ship Mortgage (herein, as the same may from time to time be amended, supplemented or otherwise modified, called the "Mortgage"), in order to secure the payment in full of the Secured Obligations (as hereinafter defined);

**NOW, THEREFORE**, in consideration of the foregoing premises and of other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, and in order to secure the payment and performance of the Secured Obligations, Mortgagor, with the intent to be legally bound, does by these presents **GRANT, BARGAIN AND SELL, CONVEY AND CONFIRM, AND MORTGAGE** to Mortgagee, its successors and assigns, the whole of the Vessel, together with all equipment, parts and accessories integral to the operation of the Vessel as a vessel, including, but not limited to, all of its boilers, engines, generators, air compressors, machinery, masts, spars, boats, cables, motors, tools, anchors, chains, boom, cranes, rigs, pumps and pumping equipment, pipe, tanks, tackle, fixtures, rigging, supplies, spare parts, fittings and machinery, tools, fuel, computer equipment, calculators, adding machines, and any other electronic equipment of every nature used in connection with the operation of the Vessel as a vessel, all machinery, equipment, engines, appliances and fixtures for generating or distributing air, water, heat, electricity, light, fuel or refrigeration, or for ventilating or sanitary purposes or for the exclusion of vermin or insects, or for the removal of dust, refuse or garbage, shelving,

214813_2.WPD

22 SEP '98   2:40 PM

RECORDED: BOOK 9884 PAGE 177

lockers, partitions, doorstops, vaults, motors, elevators, dumb-waiters, light fixtures, fire hoses and brackets and boxes for the same, fire sprinklers, alarms, mantels, screens, linoleum, carpets and carpeting, plumbing, bathtubs, sinks, basins, pipes, faucets, water closets, laundry equipment, washers, dryers, ice-boxes and heating units, and all extensions, additions, accessions, improvements, betterments, renewals, substitutions, and replacements to any of the foregoing, all of which (to the fullest extent permitted by law) shall be conclusively deemed appurtenances of the Vessels, and all other appurtenances to the Vessel appertaining or belonging thereto, whether now owned or hereafter acquired, whether on board or not, and all additions, improvements and replacements hereafter made in or to the Vessel, or any part thereof, or in or to said appurtenances, all of which property shall be deemed to be included in the term "Vessel" as used in this Mortgage.

**TO HAVE AND TO HOLD** all and singular the above mortgaged and described property unto Mortgagee, its respective successors and assigns, upon the terms herein set forth;

**PROVIDED, HOWEVER,** the condition of this Mortgage is such that if Mortgagor shall well and truly pay and perform each and every one of the Secured Obligations, in accordance with the terms of the Note, this Mortgage and all other Collateral Documents, then this Mortgage shall be released, without warranty, at the request and cost of the Mortgagor.

Capitalized terms used herein and not otherwise defined herein shall have the meanings ascribed to them in the Note.

## ARTICLE 1.
## REPRESENTATIONS, WARRANTIES AND COVENANTS OF MORTGAGOR

In order to induce Mortgagee to make the Loan and for Mortgagee to accept this Mortgage as collateral security for the payment of the Secured Obligations, Mortgagor represents and warrants to Mortgagee and covenants with Mortgagee that:

Section 1.1 **Payment and Performance of Secured Obligations**. This Mortgage is given to secure the payment and performance of the following indebtedness and obligations (collectively, the "Secured Obligations"):

(a) Payment of any and all obligations and indebtedness (together with interest thereon) of Mortgagor under the Note, and any and all extensions, modifications, increases, substitutions or renewals thereof and the performance and discharge of each and every obligation of Mortgagor set forth in the Note; and

(b) Due, prompt and complete observance and performance of each and every obligation, covenant and agreement of Mortgagor contained herein, in the Note or in any

2.

of the other Collateral Documents and any extensions, modifications, substitutions or renewals thereof.

Mortgagor will pay, observe, perform and comply with each and every one of the covenants, terms and conditions herein expressed or implied, on its part to be observed, performed, or complied with.

Section 1.2 **Citizenship**. Mortgagor is a citizen of the United States as defined in Section 2 of the Shipping Act, 1916, as amended, 46 USC 801 *et seq*. (the "Shipping Act"), duly qualified to engage in the coastwise trade of the United States, and shall remain such a citizen during the life of this Mortgage.

Section 1.3 **Ownership of Vessel, Warranty and Defense of Title**. Mortgagor lawfully owns and is lawfully possessed of the Vessel free from any mortgage, security interest, lien, charge or encumbrance whatsoever other than the lien of this Mortgage and liens permitted, and to the extent permitted, by the provisions of Section 1.7 hereof and Mortgagor will warrant and defend the title to, and possession of the Vessel and every part thereof for the benefit of Mortgagee against the claims and demands of all persons whomsoever.

Section 1.4 **Compliance with Laws**.

(a) **Documentation**. Mortgagor will comply with and satisfy all provisions of the laws and regulations of the United States now or hereafter from time to time in effect in order that the Vessel shall continue to be a documented vessel pursuant to the laws of the United States as a vessel of the United States under the United States flag, with such endorsements as shall qualify the Vessel for participation in the grades and services to which it may be dedicated from time to time.

(b) **U.S. Code, Tit. 46, Ch. 313**. Mortgagor will, at its expense and at no cost to Mortgagee, comply with and satisfy all the provisions of the U.S. Code, Tit. 46, Ch. 313, as amended (the "Ship Mortgage Act"), in order to establish, record and maintain this Mortgage as a First Preferred Ship Mortgage thereunder upon the Vessel, and will do all such other acts and execute all such instruments, deeds, conveyances, mortgages and assurances as Mortgagee shall reasonably require in order to subject the Vessel to the lien of this Mortgage as aforesaid.

(c) **Laws, Treaties and Conventions**. The Vessel shall, and Mortgagor covenants that it will, at all times comply with all applicable laws, treaties and conventions and rules and regulations issued thereunder and shall have on board as and when required thereby valid certificates showing compliance therewith.

Section 1.5 **Operation of Vessel**. Mortgagor will not cause or permit the Vessel to be operated in any manner contrary to applicable law or regulations, or in any manner not permitted by the Note or by any insurance required thereby and hereby, will not engage in any unlawful

3.

trade, violate any law or carry any cargo that will expose the Vessel to forfeiture, capture or risk of a material penalty, and will not do, or suffer or permit to be done, anything which can or may injuriously affect the documentation of such Vessel under the laws and regulations of the United States of America. Mortgagor shall keep the operation of the Vessel within the permitted navigational limits set forth in the trading warranties of the policies of insurance covering the Vessel and in any case will not operate the Vessel, or permit the Vessel to be operated, in any area where such insurance would not be fully applicable and enforceable with respect to the Vessel and its operations.

Section 1.6 **Claims, Taxes, Fees, Etc.** Mortgagor will pay and discharge or cause to be paid and discharged when due and payable from time to time, all claims against, and fees, taxes, assessments, governmental charges, fines and penalties imposed on, the Vessel, its cargoes or any income therefrom.

Section 1.7. **Liens.** Subject to Section 1.9, neither Mortgagor nor any other person has or shall have any right, power or authority to create, incur or permit to be placed or imposed or continued upon the Vessel, its freights, profits or hires, any lien, security interest, encumbrance or charge whatsoever other than the lien of this Mortgage and liens for wages of the crew, including the master of the Vessel, for wages of stevedores when employed directly by the Vessel (but only for the most recent payroll period) or for general average or salvage (any such lien being a "Permitted Lien"). Mortgagor agrees to hold a certified copy of this Mortgage in safekeeping with the Vessel's papers at the principal office of Mortgagor and, to the extent required by law, on board the Vessel, and on demand to exhibit the same to any person having business with the Vessel, or to any representative of Mortgagee.

Section 1.8. **Copy of Mortgage.** Mortgagor shall exhibit and shall require that any other person having custody or control of the Vessel exhibit a copy of this Mortgage to any Person having business with the Vessel which might give rise to a lien, including a maritime lien upon the Vessel or otherwise be deemed a sale, conveyance, mortgage or lease thereof and, on demand to any representative of Mortgagee.

Section 1.9. **Removal of Liens.** Mortgagor will not suffer to be continued any lien (other than Permitted Liens but only to the extent permitted under Section 1.7 hereof), encumbrance or charge on the Vessel other than this Mortgage and in due course, and in any event within thirty (30) days after the same shall become due and payable, will pay or cause to be discharged or make adequate provisions for the satisfaction or discharge of all claims or demands secured by any Lien on the Vessel and will cause the Vessel to be released or discharged from any such Lien. Notwithstanding the foregoing, Mortgagor shall have the right to contest any statutory or other lien claim provided that Mortgagor diligently prosecutes any such contest and at all times effectively stays or prevents any official or judicial sale therefor.

Section 1.10. **Libel or Attachment.** If a libel is filed against the Vessel or if it shall be attached, levied upon or taken into custody by virtue of any proceeding in any court or tribunal

4.

or by any government or other authority, Mortgagor shall promptly notify Mortgagee thereof by telecopier, confirmed by overnight letter addressed to Mortgagee, and within five (5) business days after any such libel, levy, attachment or taking into custody will cause the Vessel to be released and will promptly notify Mortgagee of such release in the manner aforesaid.

Section 1.11. **Maintenance of Vessel**. Mortgagor will at all times and without cost or expense to Mortgagee cause the Vessel to be maintained and preserved, in good running order and sufficiently tackled, appareled, furnished, equipped and in every respect seaworthy and in good order and operating condition (except that a full crew need not be maintained), and cause the Vessel to comply with all applicable Laws and regulations (including applicable United States Coast Guard Regulations). Mortgagor shall cause the Vessel to be drydocked, cleaned and painted whenever required by good commercial marine maintenance practice and the requirements of any insurance policy or entries respecting the Vessel. All maintenance and repairs will be made in a good and workmanlike manner by persons of appropriate skill and experience whose work will not adversely affect the service life or marketability of the Vessel. All repairs, parts, mechanisms, devices, replacements, improvements, changes, additions and alterations to the Vessel shall immediately and without further act become part of such Vessel and subject to this Mortgage. Mortgagor shall promptly furnish to Mortgagee copies of each damage survey with respect to damage to the Vessel where the survey does not specifically quantify the cost of total damages or where the survey states total damage in excess of $10,000.

Section 1.12. **Inspection**. Mortgagor shall at all times during reasonable business hours, upon five (5) days' prior notice (or one day's notice at any time when an Event of Default has occurred and is continuing), and subject to any applicable laws or regulations, afford Mortgagee or its authorized representatives full and complete access to the Vessel for the purpose of inspecting or surveying the same and its papers and, at the request of Mortgagee, Mortgagor shall delivery for inspection copies of any and all contracts and documents relating to the Vessel, whether on board or not and shall cause any charterer to comply herewith during the term of any charter to the maximum extent permitted thereunder.

Section 1.13. **Change of Flag or Port of Documentation**. Mortgagor will not change the flag or port of documentation registration number(s), name and identification marks of the Vessel without the prior written consent of Mortgagee and the payment of Mortgagor of all expenses of registration or re-registration of this Mortgage. Such consent will be granted upon Mortgagor's compliance with the following conditions: (a) Mortgagor shall have provided notice to Mortgagee, in writing, of Mortgagor's intention to relocate the Vessel to a specified port, which shall be within the coastwise trade of the United States; (b) Mortgagee shall have received an opinion of Mortgagor's counsel that the liens created by this Mortgage and the other related Financing documents are and will, after the Vessel is retitled, continue to be valid, enforceable, and perfected first priority liens; (c) Mortgagee shall have received from Mortgagor satisfactory evidence that all insurance required to be maintained by Mortgagor hereunder is and shall be in full force and effect at all times before, while, and after the Vessel is relocated; and (d) to the extent that the Vessel is being operated as a gaming vessel, Mortgagee shall receive satisfactory

5.

proof from Mortgagor that Mortgagor has applied for all appropriate gaming licenses as required for operation of the gaming business in the Vessel at the new port. Any such written consent to any one transfer or change of flag or port of documentation shall not be construed as a waiver of these provisions with respect to any other or subsequent proposed transfer or change of flag or port of documentation.

Section 1.14   **Sale or Other Disposition of Vessel.**

(a)   Mortgagor will not sell, charter, mortgage, transfer or in any other way dispose of all or any part of or interest in the Vessel without the prior written consent of Mortgagee, except as provided in subsection (b) below.

(b)   Mortgagor may charter or sublease the Vessel if Mortgagor first

(i)   provides to Mortgagee a copy of such charter or sublease upon request of the Mortgagee;

(ii)   upon request of the Mortgagee, obtains the written agreement of such charterer in each case to the collateral assignment by Mortgagor to Mortgagee of a first priority lien and security interest in the charter, charter hire and earnings of such charter, together with such charterer's acknowledgment of Mortgagee's first priority lien and security interest in the Vessel, such consent and acknowledgment to be in form acceptable to Mortgagee; and

(iii)   pledges such charter or sublease to Mortgagee as additional collateral security for the obligations of Mortgagor under the Financing.

Mortgagor undertakes and covenants that any such charter or sublease shall contain a provision prohibiting the charterer or sublessee and any other persons from (x) incurring or acquiring any lien on the Vessel and (y) using the Vessel other than in the coastwise trade of the United States. Any such charter or sublease shall be subject and subordinate to the provisions of this Mortgage and the Note and the lien hereof and of the other Loan Documents, and the term of such charter or sublease may not exceed the term of the Note. Mortgagee agrees that in the event the above requirements have been met, it will, upon request of Mortgagor, execute a non-disturbance agreement by which Mortgagee agrees that it will not disturb the rights granted under the charter or sublease so long as no default exists thereunder. Mortgagor will not charter or sublease the Vessel to, or permit the Vessel to serve under any contract of affreightment with a Person who is not a citizen of the United States entitled to operate a Vessel in the coastwise trade or a Person included within the definition of "designated foreign country" or a "national" of a "designated foreign country" in the "Foreign Assets Control Regulations" or "Cuban Assets Control Regulations" of the United States Treasury Department, 31 C.F.R. Chapter V, as amended, within the meaning of said regulations or of any regulation, interpretation or ruling issued thereunder.

Section 1.15 **Casualty**. For purposes of this Mortgage and the other Collateral Documents, a "Casualty" shall mean any of the following events in respect of the Vessel: (a) the loss of the Vessel or the use thereof due to theft, disappearance, destruction, damage beyond repair or rendering of the Vessel permanently unfit for normal use for any reason whatsoever; (b) any damage to the Vessel which results in an insurance settlement with respect to the Vessel on the basis of a total loss; (c) the permanent condemnation, confiscation or seizure of, or requisition of title to or use of, the Vessel; (d) as a result of any rule, regulation, order or other action by any Governmental Agency, the use of the Vessel in the normal course of business shall have been prohibited, directly or indirectly, for a period of three consecutive months, unless Mortgagor, prior to the expiration of such 3-month period, shall have undertaken and shall be diligently carrying forward all steps which are necessary or desirable to permit the normal use of such Vessel by Mortgagor thereof or, in any event, if use of the Vessel shall have been prohibited, directly or indirectly, for a period of six (6) consecutive months; or (e) the operation of location of the Vessel, while under requisition for use by any Governmental Agency, in any area excluded from coverage by any insurance policy then in effect with respect to the Vessel required by the terms of Section 1.18 of this Mortgage, if Mortgagor shall be unable to obtain indemnity in lieu thereof from the Governmental Agency; *provided* that for the purpose of the foregoing clause (e), if the Vessel shall be returned to Mortgagor in usable condition, then such event shall, at the option of Mortgagor, not constitute a Casualty.

Section 1.16 **Notice of Casualty or Damage**. In the event of any Casualty or any accident or damage to the Vessel in excess of $10,000, Mortgagor will give written notice thereof (containing full particulars), within three Business Days of the occurrence thereof, to Mortgagee.

Section 1.17 **Occurrence of a Casualty**. In the event of a Casualty, any proceeds received as payment for any loss under any of the insurance policies carried, shall be paid to Mortgagor, so long as there has been no occurrence and continence of an Event of Default or an unmatured default hereunder; provided, however, that such proceeds shall be used for the sole and exclusive purpose of repairing, replacing or restoring such damage or destruction.

Section 1.18 **Insurance**.

I. **Form and Amount**.

I (A). **Hull and Machinery Insurance**. At its own expense, Mortgagor shall maintain or cause to be maintained with financially sound and reputable insurers satisfactory to Mortgagee all risk (or equivalent) marine hull and machinery insurance (and, if necessary to satisfy the *proviso* of this Subpart I(A), policies of increased value insurance) and war risk hull & machinery insurance on an agreed value basis on the Vessel against loss, damage, fire, flood and such other perils and in such amounts as are usually maintained on vessels engaged in the same or a similar business under blanket fleet policies with respect to vessels of like size, character and marine activity; *provided*, *however*, that in no event shall the amount of such insurance, subject to such

7.

deductible, if any, as permitted by Mortgagee, at any time be less than the full replacement value of the Vessel.

Such insurance shall name Mortgagor as named insured and Mortgagee and other interested Persons as additional insureds as their respective interests may appear, but (subject only to Subpart II of this Section 1.18) shall be payable solely to Mortgagee for further disbursement by it to the other insureds as their interests may appear and shall be applied as set forth in Subpart II of this Section 1.18.

Unless an Event of Default hereunder shall have occurred, or is continuing hereunder, Mortgagee consents to a deductible of $10,000 per incident with respect to policies required under this Subpart I(A).

I(B). Liability Insurance. At its own expense, Mortgagor shall maintain entries with financially sound and reputable insurers or protection and indemnity associations protection, indemnity, collision, tower's liability including crew, cargo, contractual liabilities, and removal of wreck insurance and protection and indemnity war risk insurance protecting the interest of Mortgagor and Mortgagee against liability for property damage to third persons (including personal injury or death to any person arising out of the maintenance, use, operation and ownership of the Vessel, cargo damage or loss, contractual liability and wreck removal in such amounts as are usually carried by persons engaged in the same or similar businesses; provided, however, that in no event shall the amount of such insurance per person and per occurrence (subject to such deductible, if any, permitted by Mortgagee) be less than the customary amount of cover available on the market from time to time with respect to vessels of the same type, age and trade as the Vessel, and otherwise satisfactory to Mortgagee. Such liability insurance shall name Mortgagor as named insured and mortgagee and other interested Persons as additional insureds, as their respective interests may appear, but the proceeds of such policies shall be payable to the Personal actually suffering the loss in respect to which such proceeds are payable; provided, however, the if Mortgagee shall have first notified the underwriters or brokers that an Event of Default hereunder has occurred then all such proceeds shall be thereafter payable to Mortgagee for distribution to itself and others as their interests may appear as hereinafter set forth or otherwise with the consent of Mortgagee in each case.

II. Application of Proceeds. All policies of insurance required under this Section 1.18 shall be placed through first-class marine brokers acceptable to Mortgagee and shall name Mortgagee as an additional insured. All policies maintained under Subpart I hereof shall name Mortgagee as a loss payee, and, in the case of policies procured under Subpart I(A) hereof, shall provide that all payments in respect of loss or damage shall be made solely to Mortgagee for all amounts in excess of $10,000 and that upon the occurrence and continuance of an Event of Default hereunder, all proceeds shall be payable solely to Mortgagee. So long as there has been no occurrence and continuance of an Event of Default or an unmatured default hereunder, Mortgagee shall promptly remit proceeds of insurance paid to it as loss payee under the casualty policy to Mortgagor.

III.   Carriers; Approvals. All insurance required under this Section shall be placed and kept with the United States Government or with American, British, or other insurance companies, underwriters' associations, clubs or underwriting funds rated A-, Class X or better by A.M. Best & Company, approved by Mortgagee. Any approval of a policy under this Section 1.18 shall be effective until the end of the policy period or until thirty (30) days after Mortgagee shall notify Mortgagor of the desired change in the form and/or amount thereof, whichever shall first occur. Notwithstanding the foregoing, Mortgagee may require changes on shorter notice if such changes are necessary or desirable to comply with requirements of or insure against liabilities created or increased by any change, modification, amendment in the law (including judicial or administrative decisions), regulations, rules, policies or practices of the United States government or the government of any state, territory, or possession thereof or of any other place where the Vessels may be operating or whose laws may apply.

IV.   Additional Provisions. All insurance required under this Section 1.18 shall, unless otherwise first agreed in writing by Mortgagee, provide that (1) there shall be no recourse against Mortgagee for the payment of premiums, supplemental or back calls or commissions, or for warranties or representations to the underwriter, (2) if such insurance provides for the payment of club calls, assessments or advances, there shall be no recourse against Mortgagee for the payment thereof, (3) at least thirty (30) days' prior written notice of any cancellation, reduction in amount or change in coverage or other material change of such insurance shall be given to Mortgagee by the insurance underwriters, (4) the interests of Mortgagee shall be continued insured regardless of any breach of or violation by Mortgagor or any other insured of any warranties, declarations or conditions contained in such insurances, (5) no insurance shall be excess over other coverage but shall be primary insurance and shall not require any contribution from any excess insurance on the Vessel which may be carried by Mortgagee, (6) no insurance shall be invalidated by any assignment of any charters of such Vessel, and (7) the insurers agree to advise Mortgagee promptly in writing of any default in the payment of any premium and of any other act or omission of which such insurer has knowledge which might invalidate or render unenforceable, in whole or in part, any such policy. The policy shall provide for severability of interest as though separate policies were issued to each additional insured except with respect to the limits of liability.

Mortgagor shall not, without the prior written consent of Mortgagee, do any act, nor voluntarily suffer nor permit any act to be done, whereby any insurance required by this Section 1.18 shall or may be suspended, impaired or defeated, or suffer or permit the Vessel to engage in any voyage or any activity not permitted under policies of insurance satisfactory to Mortgagee in all respects for such voyage or the engaging in of such activity.

Mortgagor shall, on behalf and for the benefit of itself and Mortgagee (i) when required by law, maintain certificates of Financial Responsibility (Oil Pollution) issued by the United States Coast Guard pursuant to the Federal Water Pollution Control Act, as amended *inter alia* by the Oil Pollution Act of 1990, and (ii) maintain such additional coverage for the Vessel in respect of pollution liability as may be required by law now or hereafter in effect or customary among owners of similar vessels engaged in trade in the United States from time to time.

9.

Section 1.19  **Reimbursement of Mortgagor**.  In the event that Mortgagor shall fail to obtain or maintain insurance in accordance with the provisions of this Mortgage, Mortgagee shall have the right to obtain, and pay the premiums on, such insurance as Mortgagee reasonably deems necessary.  Mortgagor shall reimburse Mortgagee within three (3) Business Days after written demand therefor, for any and all expenditures which Mortgagee may from time to time make, lay out or expend in providing protection in respect of insurance, discharge or purchase of any liens, taxes, dues, assessments, governmental charges, fines and penalties imposed, repairs, attorneys' fees and other matters as Mortgagor is obligated herein to provide, but fails to provide.  Such obligation of Mortgagor to reimburse Mortgagee, together with interest as provided above, shall be an additional indebtedness due from Mortgagor, secured by this Mortgage, and shall be payable by Mortgagor on demand.  Mortgagee, though privileged so to do, shall be under no obligation to Mortgagor or to any other Person to make any such expenditures, nor shall the making thereof relieve Mortgagor of any Event of Default in that respect.

Section 1.20  **Reports**.  Prior to the date hereof and prior to the removal or replacement of each policy or entry thereafter, Mortgagor shall furnish to Mortgagee a certificate of insurance by a nationally recognized first-class marine insurance broker acceptable to Mortgagee, describing in reasonable detail the insurance then carried and maintained on and with respect to each Vessel and certifying that such insurance complies with the terms hereof and certifying that the insurances are in the form, cover the risks and are in the amounts determined in accordance with Section 1.18 of this Mortgage, and that, in the opinion of such firm, the insurance then carried and maintained complies with the terms of said Section 1.18.  Mortgagor shall obtain for the benefit of Mortgagee the undertaking of Mortgagor's insurance agent or broker to promptly advise Mortgagee in writing of any act or omission of which such agent or broker has knowledge which might invalidate or render unenforceable, in whole or in part, any such policy.

Section 1.21  **Identification of Charterer**.  Mortgagor shall identify in a manner deemed sufficient by Mortgagee the identity of all parties chartering the Vessel for a charter period of 12 months or more.

## ARTICLE 2
## DEFAULTS

Section 2.1  **Events of Defaults**.  Each of the following events (each of which is herein called an "Event of Default") shall constitute a default hereunder:

(a)  Any event constituting an "Event of Default" as such term is defined in the Note (subject to the notice and cure periods set forth therein);

(b)  An arrest, attachment or detention of the Vessel by a U.S. Marshall or other officer of any court of law, equity or admiralty jurisdiction in any country or nation of the world by or by any government or other Person which remains in effect for more than five (5) Business Days; and

(c) Mortgagor or any charterer shall remove or attempt to remove the Vessel beyond the limits of the continental United States of America, or shall abandon the Vessel in a foreign port or shall cease to be a citizen of the United States of America entitled to operate the Vessel in the coastwise trade within the meaning of Section 2 of the Shipping Act, or shall operate or attempt to operate the Vessel anywhere other than within the coastwise trade of the United States, or if notice is given pursuant to Section 1.14 hereof (subject to clause (d) thereof).

## ARTICLE 3
## REMEDIES; APPLICATION OF PROCEEDS

At any time after an Event of Default has occurred, the whole of any and all obligations and indebtedness evidenced by the Note shall become due at Mortgagee's option forthwith or thereafter at the continuing option of Mortgagee, and this Mortgage shall remain in force, and Mortgagee may exercise any right, power or remedy permitted to it by law or by contract, and in particular, without limiting the generality of the foregoing, Mortgagee shall have the absolute right, at its option and election, to pursue one or more of the following rights:

(a) Mortgagee shall be entitled thereon or thereafter without notice or demand, to the extent permitted by law: (a) to institute suit at law or in equity to enforce the rights of the Mortgagee and (b) to enforce, at Mortgagee's continuing option, payment of all sums secured hereby by action at law or by suit in equity to foreclose this Mortgage, either or both, concurrently or otherwise; and on action or suit shall not abate or be a bar to or waiver of Mortgagee's right to institute or maintain the other, provided said Mortgagee shall have only one (1) obligation to make payment and satisfaction of said indebtedness;

(b) Mortgagee shall have the right from time to time to take action to recover any sums, whether interest, principal or any installment of either, or any other sums required to be paid under the terms of this Mortgage, the Note or any of the other documents executed in connection therewith, as the same become due, without regard to whether or not the principal sum secured, or any other sums secured, by the Note shall be due, and without prejudice to the right of Mortgagee thereafter to bring an action of foreclosure, or any other action, with respect to any Event of Default by Mortgagor existing at the time such earlier action was commenced; or

(c) Exercise all the rights and remedies in foreclosure and otherwise given to mortgagees by the provisions of the Ship Mortgage Act, or other applicable law including the laws of any other applicable jurisdiction;

(d) Take and enter into possession of the Vessel, wherever the same may be, and sell it at any place or places and at such time or times as Mortgagee may specify, at public or private sale, by sealed bids or otherwise, on such terms and conditions as Mortgagee deems best, free of any claim, commitment or encumbrance, regardless of the

nature thereof, in favor of Mortgagor and, except as provided by law, in favor of any other person, upon advance notice of ten (1) consecutive days published in any newspaper authorized to publish legal notices of that kind in the port of documentation and the place of sale of such Vessel and by sending notice of each such sale at least fourteen (14) days prior to the date fixed for such sale, by mail, to Mortgagor. Sale may be held at such place and at such time as the Mortgagee by notice may have specified, or may be adjourned by Mortgagee from time to time by announcement at the time and place appointed for such sale or for such adjourned sale, and, without further notice or publication, Mortgagee may make any such sale at the time and place to which the same shall be so adjourned; and any sale may be conducted without bringing the Vessel to the place designated for such sale and in such manner as Mortgagee may deem to be for its best advantage, and Mortgagee may become the purchaser at any public sale, and shall have the right to credit on the purchase price any and all sums of money due to Mortgagee under the Note, or any other Loan Document.

(d)     Mortgagee shall be entitled to exercise the remedies and other rights set forth in the Note, and any proceeds realized in connection therewith shall be applied as set forth above.

## ARTICLE 4
## GENERAL POWERS OF MORTGAGEE

(a)     *Arrest or Detention of Vessel*. In the event that the Vessel shall be arrested or detained by a Marshal or other officer of any court of law, equity or admiralty jurisdiction in any country or nation of the world or by any government or other Person (as defined in the Note), Mortgagor does hereby authorize and empower Mortgagee, five (5) business days from the date of arrest or detention, in the name of Mortgagor, or its successors or assigns, to apply for and receive possession of and to take possession of the Vessel with all the rights and powers that Mortgagor, or its successors or assigns, might have, possess or exercise in any such event; and this power of attorney shall be irrevocable and may be exercised not only by Mortgagee but also by its appointee or appointees, with full power of substitution, to the same extent as if the said appointee or appointees had been named as one of the attorneys above named by express designation.

(b)     *Suits*. Mortgagor also authorizes and empowers Mortgagee or its appointees or any of them to appear, upon prior written notice to Mortgagor, in the name of Mortgagor, its successors or assigns, in any court of any country or nation of the world where a suit is pending against the Vessel because of or on account of any alleged lien against the Vessel from which the Vessel has not been released and to take such proceedings as to them may seem proper towards the defense of such suit and the discharge of such lien, and all expenditures made or incurred by them or any of them for the purpose of such defense or discharge shall be a debt due from Mortgagor, its successors and assigns, to Mortgagee, and shall be secured by the lien of this Mortgage in like manner and extent as if the amount and description thereof were written herein.

## ARTICLE 5
## INDEMNITY

Mortgagor assumes liability for, and agrees to indemnify and hold Mortgagee and its directors, officers, agents and employees harmless from, all claims, costs, expenses (including legal expenses), damages and liabilities to the extent arising from or pertaining to this Mortgage or the ownership, use, possession or operation of the Vessel; provided that Mortgagor shall have no obligation hereunder for indemnified liabilities arising from the gross negligence or wilful misconduct of Mortgagee. The agreements and indemnities contained in this Article shall survive the maturity or earlier discharge of the Mortgage and payment in full of the Note.

## ARTICLE 6
## SUNDRY PROVISIONS

Section 6.1 **Cumulative Remedies; No Waiver**. Each and every power and remedy herein given to Mortgagee shall be cumulative and shall be in addition to every other power and remedy herein or now or hereafter existing at law, in equity, in admiralty or by statute, and each and every power and remedy whether herein given or otherwise existing may be exercised from time to time and as often and in such order as may be deemed expedient by Mortgagee, and the exercise or the beginning of the exercise of any power or remedy shall not be construed to be a waiver of the right to exercise at the same time or thereafter any other power or remedy. No delay or omission by Mortgagee in the exercise of any right or power in the pursuit of any remedy specified in Article 3 hereof accruing upon any Event of Default hereof shall impair any such right, power or remedy or be construed to be a waiver of any such Event of Default or any acquiescence therein; nor shall the acceptance by Mortgagee of any security or of any payment of or on account of any part of the indebtedness secured by this Mortgage or of any payment on account of any past Event of Default be construed to be a waiver of any right to enforce remedies with respect to any future Event of Default or of any past Event of Default not completely cured thereby.

Section 6.2 **Further Assurances**. From time to time, Mortgagor will do, execute, acknowledge and deliver, or cause to be done, executed, acknowledged and delivered such other and further assurances and documents as in the opinion of Mortgagee may reasonably be required in order to more effectively subject the Vessel to the lien of this Mortgage or more effectively subject the Vessel to the performance of the terms and provisions of this Mortgage, or to enable this Mortgage continuously to enjoy the status of a First "Preferred" Mortgage.

Section 6.3 **No Waiver of Preferred Status**. No provision of this Mortgage shall be deemed to constitute a waiver by Mortgagee of the preferred status hereof given by the Ship Mortgage Act, and any provision of this mortgage which would otherwise constitute such a waiver shall to such extent be of no force or effect.

Section 6.4   **Survival of Agreements**. All representations, warranties, covenants and agreements herein contained or made in writing in connection with this Mortgage shall survive the execution of this Mortgage and shall continue in full force and effect until all sums secured hereby shall have been paid in full, and the same shall bind and inure to the benefit of the representative successors and assigns of Mortgagor and Mortgagee.

Section 6.5   **Successor Trustee**. Mortgagee may, from time to time, substitute another trustee in its place and capacity of Trustee herein. Upon such appointment, and without conveyance to the successor trustee, the latter shall be vested with all the titles, estates, rights, powers and trusts conferred upon the Trustee herein named. Any such assignment will be in form acceptable for recording under the Ship Mortgage Act.

Section 6.6   **Notices**. All notices and other communications required or permitted to be given hereunder shall be given as provided in the Note.

Section 6.7   **Counterparts**. This instrument may be executed in any number of counterparts, and each of such counterparts shall for all purposes be deemed to be an original.

Section 6.8   **Nature of Agreements Hereunder**. The agreements, terms, conditions, rights, remedies and indemnities provided herein are in addition to, not in limitation of, and shall not be limited by, each of the agreements, terms, conditions, rights, remedies and indemnities contained in the Loan Agreement.

Section 6.9   **Recording**. For purposes of this Mortgage, the total amount of this Mortgage is Eight Hundred Fifty Thousand Dollars ($850,000.00) plus interest, costs, expenses, any applicable prepayment charge and performance of Mortgage covenants; the discharge amount is the same as the total amount and there is no separate discharge amount.

Section 6.10   **Construction**   Any provision of this Mortgage which is prohibited or unenforceable in any jurisdiction shall, as to such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions hereof, and any such prohibition or unenforceability shall not invalidate or render unenforceable such provision in any other jurisdiction. To the extent permitted by law, Mortgagor hereby waives any provision of law which renders any provision hereof prohibited or unenforceable in any respect.

Section 6.11   **Under Seal**. This Mortgage is intended as an instrument under seal.

IN WITNESS WHEREOF, Mortgagor has caused this Mortgage to be duly executed and delivered as of the day and year first above written.

WITNESS:

_____ (SEAL)
                           Gary J. Iskra

_____ (SEAL)
                          Deborah L. Iskra

15.

COMMONWEALTH OF PENNSYLVANIA    )
                                ) SS:
COUNTY OF _____       )

On this _____ day of _____, 1998, before me a notary public, the undersigned officer, personally appeared GARY J. ISKRA known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission expires:


COMMONWEALTH OF PENNSYLVANIA    )
                                ) SS:
COUNTY OF Allegheny             )

On this 15th day of September, 1998, before me a notary public, the undersigned officer, personally appeared DEBORAH L. ISKRA known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

*Heidi M. Scheerbaum*
Notary Public

My Commission expires:

```
Notarial Seal
Heidi M. Scheerbaum, Notary Public
Richland Twp., Allegheny County
My Commission Expires June 4, 2001
```
Member, Pennsylvania Association of Notaries

IN WITNESS WHEREOF, Mortgagor has caused this Mortgage to be duly executed and delivered as of the day and year first above written.

WITNESS:

_____    _____ (SEAL)
Linda L. Humberger                Gary J. Iskra

_____    _____ (SEAL)
John P. Boyle                     Deborah L. Iskra

15.

COMMONWEALTH OF PENNSYLVANIA   )
                               ) SS:
COUNTY OF Wayne mt             )

On this 15th day of September, 1998, before me a notary public, the undersigned officer, personally appeared GARY J. ISKRA known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that he executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission expires:
SHEILA A. MUSIC
Notary Public, Wayne County, MI
My Commission Expires Dec. 18, 2002


COMMONWEALTH OF PENNSYLVANIA   )
                               ) SS:
COUNTY OF Allegheny            )

On this 15th day of September, 1998, before me a notary public, the undersigned officer, personally appeared DEBORAH L. ISKRA known to me (or satisfactorily proven) to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same for the purposes therein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.

_____
Notary Public

My Commission expires:
Notarial Seal
Heidi M. Schoestarm, Notary Public
Highland Twp., Allegheny County
My Commission Expires June 4, 2001
Member, Pennsylvania Association of Notaries