*Iskra, Gary J.*
*160-1149848-0-013*

# TERM LOAN NOTE

$850,000.00                                                September 15, 1998

     For value received, **GARY J. ISKRA** and **DEBORAH L. ISKRA**, husband and wife (each a "Borrower" and collectively, the "Borrowers") with a mailing address c/o RD 1, Box 299, Meyer Scholl Road, Ligonier, Pennsylvania 15658, jointly and severally promise to pay to the order of **DOLLAR BANK, FEDERAL SAVINGS BANK**, a federal savings bank (the "Lender"), with offices at Three Gateway Center, 10 South, Pittsburgh, Pennsylvania 15222 (the "Lender's Office"), the principal sum of **EIGHT HUNDRED FIFTY THOUSAND DOLLARS** ($850,000.00), and to pay interest thereon, all as hereinafter provided.

     This Note is the "Note" referred to in, and is secured by and entitled to the benefits of, *inter alia*, the following documents:

     (i)    Assignment of Life Insurance Policy dated the date hereof (the "Assignment") executed by the American Home Improvement Products, Inc.; and

     (ii)    First Preferred Ship Mortgage dated the date hereof executed by the Borrowers for the benefit of the Lender (the "Ship Mortgage") granting the Lender a lien and security interest in the Vessel (as defined in the Ship Mortgage).

     This Note, the Ship Mortgage, the Assignment and all amendments, modifications and extensions hereof and thereof, and all other documents executed or to be executed in connection herewith and therewith are collectively referred to as the "Loan Documents".

     1.    **Interest**.  (a) The aggregate principal amount of this Note outstanding from time to time from and after the date of this Note (the "Closing Date") shall bear interest for each day until paid at the rate per annum set forth below during the periods indicated:

     (i)    From the Closing Date through October 31, 2003, at eight percent (8.0%) per annum; and

     (ii)    From October 1, 2003 through September 30, 2008, at the Index Rate (as hereinafter defined) posted on October 1, 2003 (or the next date posted if not posted on October 1, 2003) plus two and three quarters percent (2.75%). For purposes of this Note, "Index Rate" shall mean an interest rate equal to the weekly average yield on United States Treasury Securities adjusted to a constant maturity of five (5) years as posted by the Federal Reserve Board or as close to a constant maturity of five (5) years as may be posted by the Federal Reserve Board and selected by the Lender. In the event the aforesaid average weekly yield is discontinued or no longer published, then the Lender shall select an index or statistic which the Lender believes most closely approximates the aforesaid average

214817_2.WPD

weekly yield(s) and such index or statistic shall thereupon become the Index Rate; and

(iii) From and after October 1, 2008, at the Index Rate posted on October 1, 2008 (or the next date posted if not posted on October 1, 2008) plus two and three quarters percent (2.75%).

(b) Interest shall be calculated on the basis of a 360-day year, counting the actual number of days elapsed, and shall be due and payable, in arrears, at the times specified in Paragraph 2 unless otherwise provided for in this Note.

(c) After the occurrence, and during the continuance, of an Event of Default (as hereinafter defined), interest shall accrue on the unpaid principal balance of this Note at a rate per annum for each day equal to four percent (4.0%) in excess of the rate in effect at such time as determined under Paragraph 1(a), and such interest shall be due and payable on demand.

(d) If, at any time, the rate of interest payable hereunder shall be deemed by a competent court of law, governmental agency or tribunal to exceed the maximum rate of interest permitted by applicable law, then for such time as such rate would be deemed excessive, its application shall be suspended and there shall be charged in lieu thereof the maximum rate of interest permitted under such law. If any payment of interest or in the nature of interest would cause the foregoing' interest rate limitation to be exceeded, then such excess payment shall be credited as a payment of principal, unless the Borrowers notify the Lender to return the excess payment to the Borrowers.

2. <u>Payment of Principal and Interest</u>. (a) The Borrowers shall pay to the Lender the entire outstanding principal balance of this Note together with interest hereon as follows:

(i) Interest accruing from the Closing Date through and including September 30, 1998 will, at the Lender's option, be collected in advance on the Closing Date or billed subsequently to the Borrowers and payable in accordance with the terms of such billing;

(ii) Commencing on November 1, 1998 and continuing on the first day of each month through and including October 1, 2003, the Borrowers shall pay to the Lender sixty (60) equal and consecutive monthly installments of principal and interest, each of such installments being in an amount sufficient to fully amortize the outstanding principal balance of this Note at the rate determined under Paragraph 1(a)(i) over a term of two hundred forty (240) months (the "<u>Amortization Period</u>");

(iii) Commencing on November 1, 2003 and continuing on the first day of each consecutive month thereafter through and including October 1, 2008, the Borrowers shall pay to the Lender sixty (60) equal and consecutive monthly installments of principal and interest, each of such installments being in an amount

sufficient to fully amortize the outstanding principal balance of this Note at the rate determined under Paragraph 1(a)(ii) over the then unexpired portion of the Amortization Period;

(iv) Commencing on November 1, 2008 and continuing on the first day of each consecutive month thereafter through and including September 1, 2013, the Borrowers shall pay to the Lender fifty-nine (59) equal and consecutive monthly installments of principal and interest, each of such installments being in an amount sufficient to fully amortize the outstanding principal balance of this Note at the rate determined under Paragraph 1(a)(iii) over the then unexpired portion of the Amortization Period; and

(v) On October 1, 2013, the Borrowers shall pay to the Lender a final consecutive monthly installment in an amount equal to the then outstanding principal balance of this Note and all interest accrued hereon.

(b) All sums to be paid to the Lender under this Note shall be paid directly to the Lender's Office on or before 2:00 p.m. prevailing time in Pittsburgh, Pennsylvania, on the day when due, in lawful money of the United States of America and in immediately available funds, without set-off, counterclaim or other deduction of any nature and without presentment, demand, protest or notice of any kind, all of which are hereby expressly waived by the Borrowers, and any action therefor shall immediately accrue. All payments shall be credited first to charges, fees and expenses accrued on this Note, second to interest accrued on this Note and the remainder to reduction of the outstanding principal balance hereof in the inverse order of maturity. Any payment otherwise due on a day which is not a Business Day shall not be due until the next succeeding Business Day. "__Business Day__" shall mean any day other than a Saturday, Sunday, public holiday or other day a banking institution is authorized or obligated to close in Pittsburgh, Pennsylvania.

(c) Any payments made by the Borrowers to the Lender by a check other than a check with the Lender as the drawee bank shall not be credited against the obligations due until the later to occur of (i) the date of clearance of such check, or (ii) one (1) Business Day after being deposited by the Borrowers with the Lender.

(d) In the event the Borrowers fail to pay within ten (10) days of when due any installment under this Note, in addition to making payment of the installment then due, the Borrowers shall, at the option of the Lender, pay to the Lender a late charge in an amount equal to six percent (6.0%) of such overdue installment.

3. __Prepayments__. The Borrowers shall have the right at their option from time-to-time to prepay the outstanding principal balance of this Note upon the following terms and conditions:

(i) Whenever the Borrowers desire to make a prepayment, the Borrowers shall provide not less than three (3) Business Days' prior written notice to the Lender setting forth the date (which shall be a Business Day) on which the

proposed prepayment is to be made and the total principal amount of such prepayment;

(ii) No partial prepayment shall postpone the due date or change the amount of any subsequent installment due;

(iii) Prepayments shall be credited first to charges, fees and expenses accrued on this Note, second to interest accrued on this Note and the remainder to the reduction of principal in the inverse order of maturity.

(iv) Each prepayment shall be accompanied by all accrued interest and other charges then due and payable under this Note and a prepayment premium equal to the percentage of such prepayment indicated below based upon the date such prepayment is made as indicated below:

| Date of Prepayment | Percentage of Prepayment Amount payable as Prepayment Premium |
|---|---|
| From Closing Date through September 30, 1999; From October 1, 2003 through September 30, 2004; From October 1, 2008 through September 30, 2009; | Five Percent (5.0%) |
| From October 1, 1999 through September 30, 2000; From October 1, 2004 through September 30, 2005; From October 1, 2009 through September 30, 2010; | Four percent (4.0%) |
| From October 1, 2000 through September 30, 2001; From October 1, 2005 through September 30, 2006; From October 1, 2010 through September 30, 2011; | Three percent (3.0%) |
| From October 1, 2001 through September 30, 2002; From October 1, 2006 through September 30, 2007; From October 1, 2011 through September 30, 2012; | Two percent (2.0%) |
| From October 1, 2002 through September 30, 2003; From October 1, 2007 through September 30, 2008; From October 1, 2012 through September 30, 2013; | One percent (1.0%) |

4. <u>Lender's Records</u>. The Lender is hereby authorized to record in its books and records the amount of all principal payments, interest due, interest paid, and all other charges, fees

and expenses paid or due, and the like, under or in connection with this Note, and except in the case of manifest error, such books and records shall be conclusive and binding as to the amounts at any time due to the Lender from the Borrowers under this Note.

     5.     <u>Events of Default</u>. Each of the following shall constitute an event of default (an "<u>Event of Default</u>") under this Note:

     (i)     The failure of the Borrowers to pay when due any principal of this Note at maturity in accordance with the terms hereof.

     (ii)     The failure of the Borrowers to pay when due any principal (other than principal at maturity), interest, fee, indemnity, expense or other amount due under this Note and such failure continues for a period of ten (10) days after written notice thereof from the Lender to the Borrowers.

     (iii)     The Borrowers shall breach or default in the due observance or performance of any covenant, condition or agreement contained in this Note other than under clauses (i) and (ii) above, and such breach or default shall continue for a period of fifteen (15) days after written notice thereof from the Lender to the Borrowers.

     (iv)     A breach or default shall occur under any of the other Loan Documents, including without limitation, the Ship Mortgage, and the same shall continue beyond any applicable period of grace.

     (v)     Any representation or warranty made by or on behalf of the Borrowers in the Loan Documents or in any certificate, financial statement or other document furnished to the Lender in connection with this Note shall prove to have been false or misleading in any material respect when made.

     (vi)     A proceeding shall have been instituted in respect of a Borrower.

     (A)     seeking to have an order for relief entered in respect of such party, or seeking a declaration or entailing a finding that such party is insolvent or a similar declaration or finding, or seeking dissolution, winding-up, charter revocation or forfeiture, liquidation, reorganization, arrangement, adjustment, composition or other similar relief with respect to such party, its assets or its debts under the Bankruptcy Code, as amended, 11 U.S.C. 101 et seq. (the "<u>Bankruptcy Code</u>") or any other law relating to bankruptcy, insolvency, relief of debtors or protection of creditors, termination of legal entities or any other similar law now or hereafter in effect, or

  (B) seeking appointment of a receiver, trustee, custodian, liquidator, assignee, sequestrator or other similar official for such party or for all or any substantial part of its property,

and such proceeding shall result in the entry, making or grant of any such order for relief, declaration, finding, relief or appointment, or such proceeding shall remain undismissed and unstayed for a period of ninety (90) consecutive days.

  (vii) A Borrower shall become insolvent, shall fail to pay, become unable to pay, or state that it is or will be unable to pay, its debts as they become due, shall voluntarily suspend transaction of its business, shall make a general assignment for the benefit of creditors, shall institute (or fail to controvert in a timely and appropriate manner) a proceeding described in clause (vi) above or (whether or not any such proceeding has been instituted) shall consent to or acquiesce in any such order for relief, declaration, finding or relief described therein, shall institute (or fail to controvert in a timely and appropriate manner) a proceeding described in clause (vi) above or (whether or not any such proceeding has been instituted) shall consent to or acquiesce in any such appointment or to the taking of possession by any such official of all or any substantial part of its property whether or not any such proceeding is instituted, shall revoke or forfeit its articles of incorporation (or other constituent documents), dissolve, windup or liquidate itself or any substantial part of its property (except to the extent permitted in the Loan Documents), or shall take any action in furtherance of any of the foregoing.

  (viii) The death of a Borrower.

  (ix) The Lender shall reasonably determine that an event has occurred which has a materially adverse effect on the financial condition of the Borrowers or the Borrowers' ability to satisfy its obligations under this Note.

  (x) A Borrower shall suffer final judgment for payment of money individually or in the aggregate in excess of $50,000 not fully covered by insurance and the same shall not be discharged within a period of thirty (30) days from the entry of such judgments, unless, pending further proceedings, execution has not been commenced, or if commenced, has been effectively stayed.

  (xi) A writ or warrant of attachment, garnishment, execution, distraint or similar process shall have been issued against the Borrowers in an amount exceeding $50,000 in the aggregate or against the Vessel in any amount, which shall have become final and nonappealable or remained undischarged and unstayed for a period of sixty (60) consecutive days, or a creditor of the Borrowers shall obtain possession of the Vessel by levy, replevin, self-help or other means of exercising their rights as such a creditor.

(xii) The Lender's liens in the Vessel are or become unperfected or no longer constitute first priority liens or security interests therein.

(xiii) This Note or any other Loan Document to which the Borrowers are a party, or any term or provision hereof or thereof shall cease to be in full force and effect (except in accordance with the express terms of such Loan Document), or the Borrowers shall, or shall purport to, terminate (except in accordance with the terms of such Loan Document), repudiate, declare voidable or void or otherwise contest, this Note or such other Loan Document or term or provision hereof or thereof or any obligation or liability of the Borrowers hereunder or thereunder.

(xiv) The indictment of the Borrowers under any criminal statute, or commencement or threatened commencement of criminal or civil proceedings against the Borrowers pursuant to which statute or proceedings the penalties or remedies sought or available include forfeiture of any of the property of the Borrowers.

6. <u>Remedies</u>. (a) Upon the occurrence of an Event of Default:

(i) If the Event of Default that has occurred is an Event of Default other than those specified in Paragraph 5(vi) or (vii) hereof, then, at the Lender's option, the unpaid principal balance of this Note and all interest, fees, expenses and other charges accrued hereon may become immediately due and payable without demand, presentment or notice of any kind (all of which the Borrowers hereby waive);

(ii) If the Event of Default that has occurred is an Event of Default specified in Paragraph 5(vi) or (vii) hereof, then the unpaid principal balance of this Note and all interest, fees, expenses and other charges accrued hereon shall be immediately due and payable without demand, presentment or notice of any kind (all of which the Borrowers hereby waive);

(iii) The Lender may set-off and apply against the unpaid balance of this Note, any and all debts owing to, and any other funds held in any manner for the account of, the Borrowers by the Lender, including, without limitation, all deposit accounts (general or special, time or demand, provisional or final) at any time maintained by the Borrowers with the Lender and any other indebtedness at any time owing by the Lender to or for the account of the Borrowers, irrespective of whether or not the Lender shall have made any demand under this Note; and

(iv) The Lender shall have all of the rights and remedies afforded to it by law and such additional rights and remedies as are contained in the Ship Mortgage and the other Loan Documents.

(b)  If the Lender retains the services of counsel in connection with an Event of Default or to enforce a remedy under this Note, reasonable attorney's fees shall be payable by the Borrowers to the Lender, and such fees shall be added to the amount due under this Note and shall be secured by the Ship Mortgage and the other Loan Documents. The Borrowers shall pay all costs incurred by the Lender in connection with proceedings to recover any sums due hereunder. The Borrowers shall also pay any reasonable charge of the Lender in connection with the satisfaction of this Note.

(c)  The remedies of the Lender as provided herein, in the Ship Mortgage and the other Loan Documents shall be cumulative and concurrent, and may be pursued singly, successively, or together against the Borrowers and/or any collateral securing any payment of this Note at the sole discretion of the Lender; and the failure to exercise any such rights or remedy shall in no event be construed as a waiver or release of the same.

7.  Miscellaneous.  (a) The Lender shall not be deemed, by any act of omission or commission, to have waived any of its rights or remedies hereunder unless such waiver is in writing and signed by the Lender, and then only to the extent specifically set forth in the writing. A waiver as to one event shall not be construed as continuing or as a bar to or waiver of any right or remedy as to a subsequent event.

(b)  Nothing herein contained nor any transaction related hereto shall be construed or shall operate either presently or prospectively to require the Borrowers to make any payments or to do any act contrary to law, but if any clause or provision herein contained shall otherwise so operate to invalidate this Note, in whole or in part, then such clause or provision only shall be held for naught as though not herein contained and the remainder of this Note shall remain operative and in full force and effect.

(c)  The Lender shall in no event be construed for any purpose to be a partner, joint venturer or associate of the Borrowers or of any lessee, operator, concessionaire or licensee of the Borrowers in the conduct of their respective businesses.

(d)  Any notice or consent required hereunder shall be in writing and shall be delivered either in person, by facsimile transmission, overnight courier or by certified mail, postage prepaid, return receipt requested, to the addresses of the parties first above written, unless such address is changed by written notice to the other parties. All notices and other communications shall be deemed effective when delivered in person, when received by registered or certified mail or overnight courier, when transmitted by facsimile transmission during a Business Day (with confirmation of receipt) or when refused by the addressee, whichever the case may be.

(e)  The Borrowers' obligations hereunder are joint and several and shall extend to and bind the Borrowers' heirs, executors, administrators, successors and assigns. Lender reserves the right to participate or assign interests in this Note and otherwise dispose of the same in Lender's normal course of business, and the benefits hereof shall inure to the successors and assigns of the Lender.

(f) This Note shall be deemed made under and governed by, and construed and enforced in accordance with, the laws of the Commonwealth of Pennsylvania in all respects without giving effect to its conflict of laws principles, including matters of construction, performance and enforcement. The Borrowers hereby agree that any action or proceeding against it may be commenced and maintained in any court in the Commonwealth of Pennsylvania or in the United States District Court for the Western District of Pennsylvania, and the Borrowers further consent to service of process in any such action by the mailing of copies of such process to the Borrowers in the manner and at the address specified in Paragraph 8(d) hereof, unless such address is changed by written notice hereunder, and the Borrowers hereby waive any claim that Allegheny County, Pennsylvania is an inconvenient forum and that any action or proceeding arising out of or relating to this Note and commenced in any state or federal courts sitting in Allegheny County, Pennsylvania lacks proper venue. The Borrowers agree that the courts sitting in the Commonwealth of Pennsylvania and the United States District Court for the Western District of Pennsylvania shall have exclusive jurisdiction for any action or proceeding commenced by or through the Borrowers with respect to the subject matter hereof and all controversies and disputes arising hereunder.

(g) Wherever possible, each provision of this Note shall be interpreted in such manner as to be effective and valid under applicable law, but if any provision of this Note or portion thereof shall be prohibited by or invalid under such law, such provision shall be ineffective to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Note.

(h) This Note is intended as an instrument under seal.

(i) THE BORROWERS HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE ANY RIGHT THEY MAY HAVE TO DEMAND A TRIAL BY JURY IN RESPECT OF ANY LITIGATION ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE OR THE TRANSACTIONS CONTEMPLATED HEREIN. FURTHER, THE BORROWERS HEREBY CERTIFY THAT NO REPRESENTATIVE OR AGENT OF THE LENDER NOR THE LENDER'S COUNSEL HAS REPRESENTED, EXPRESSLY OR OTHERWISE, THAT, IN THE EVENT OF SUCH LITIGATION, THE LENDER WOULD NOT SEEK TO ENFORCE THIS WAIVER OF RIGHT TO JURY TRIAL PROVISION. THE BORROWERS FURTHER ACKNOWLEDGE THAT THE LENDER HAS BEEN OR WILL BE INDUCED TO MAKE THE LOAN EVIDENCED BY THIS NOTE BY, <u>INTER ALIA</u>, THE PROVISIONS OF THIS PARAGRAPH.

[SIGNATURES APPEAR ON THE FOLLOWING PAGE]

IN WITNESS WHEREOF, the Borrowers, intending to be legally bound hereby, have executed this Term Loan Note the day and year first above written.

WITNESS:

_____   _____ (SEAL)
                                             **GARY J. ISKRA**

WITNESS:

_____   _____ (SEAL)
                                             **DEBORAH L. ISKRA**

COMMONWEALTH OF PENNSYLVANIA  )
                              )  SS:
COUNTY OF ALLEGHENY           )

    BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, personally appeared GARY J. ISKRA, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing Term Loan Note and acknowledged that he executed the same for the purposes therein contained.

    WITNESS my hand and notarial seal this ____ day of _____, 1998.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:


COMMONWEALTH OF PENNSYLVANIA  )
                              )  SS:
COUNTY OF ALLEGHENY           )

    BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, personally appeared DEBORAH L. ISKRA, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing Term Loan Note and acknowledged that he executed the same for the purposes therein contained.

    WITNESS my hand and notarial seal this 15th day of September, 1998.

_Heidi M. Scheerbaum_
NOTARY PUBLIC

MY COMMISSION EXPIRES:

```
Notarial Seal
Heidi M. Scheerbaum, Notary Public
Richland Twp., Allegheny County
My Commission Expires June 4, 2001
Member, Pennsylvania Association of Notaries
```

IN WITNESS WHEREOF, the Borrowers, intending to be legally bound hereby, have executed this Term Loan Note the day and year first above written.

WITNESS:

_[signature: Linda L. Heenberg]_    _[signature]_ (SEAL)
                                    GARY J. ISKRA

WITNESS:

_[signature: J. R. G. Boyd]_        _[signature]_ (SEAL)
                                    DEBORAH L. ISKRA

10.

COMMONWEALTH OF PENNSYLVANIA )
) SS:
COUNTY OF ALLEGHENY )

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, personally appeared GARY J. ISKRA, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing Term Loan Note and acknowledged that he executed the same for the purposes therein contained.

WITNESS my hand and notarial seal this 15th day of September, 1998.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

SHEILA A. MUSIC
Notary Public, Wayne County, MI
My Commission Expires Dec. 18, 2002


COMMONWEALTH OF PENNSYLVANIA )
) SS:
COUNTY OF ALLEGHENY )

BEFORE ME, the undersigned authority, a Notary Public in and for said County and State, personally appeared DEBORAH L. ISKRA, known to me (or satisfactorily proven) to be the person whose name is subscribed to the foregoing Term Loan Note and acknowledged that he executed the same for the purposes therein contained.

WITNESS my hand and notarial seal this 15th day of September, 1998.

_____
NOTARY PUBLIC

MY COMMISSION EXPIRES:

Notarial Seal
Heidi M. Scheerbaum, Notary Public
Richland Twp., Allegheny County
My Commission Expires June 4, 2001
Member, Pennsylvania Association of Notaries